2002 WY 120

**The STATE of Wyoming, Petitioner,**

v.

**Richard E. CURTIS, Respondent.**

**No. 00–196.**

Supreme Court of Wyoming.

Aug. 12, 2002.

Rehearing Denied Sept. 17, 2002.

---

Representing Petitioner: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Scott A. Sargent, Special Assistant Attorney General. Argument by Mr. Sargent.

Representing Respondent: James K. Lubing of James K. Lubing Law Office, Jackson, WY; and Heather Noble, Jackson, WY. Argument by Mr. Lubing.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1]   The State seeks review of a district court order reversing Curtis' conviction on the ground that the method utilized by the circuit court for compiling the jury list and calling potential jurors from only the northern part rather than the whole of Lincoln

* Chief Justice at time of oral argument.

County violated Wyoming Statute. We reverse, holding that the legislature has provided two alternative methods for compiling jury lists and that the method utilized by the circuit court in this case falls within the second legislatively authorized method.

## ISSUES

[¶ 2] The State presents the following issue:

Do Wyo. Stat. §§ 18–3–402, 1–11–129, 1–11–106, and 1–11–109 require the county (circuit) court to call potential jurors from a jury list comprised of residents from the entire county, without deviation, or may the county (circuit) court, if sitting in more than one location in the county, call names of potential jurors from different jury lists comprised of residents of the county residing closer to the place of trial?

## FACTS

[¶ 3] Curtis was charged with two counts of reckless endangering after allegedly pointing a loaded firearm at two men in a vehicle parked along the edge of his property near Alpine in northern Lincoln County.

[¶ 4] Prior to trial, Curtis asked the court to select the pool of prospective jurors to hear the case from the entirety of Lincoln County, rather than from the northern half as was the court's customary practice in cases arising in that part of the county. Citing the Wyoming Constitution and state statute, Curtis argued that potential jurors must be selected from the county as a whole and that the circuit court had no authority to restrict the pool from which jurors were selected to a smaller geographic area.

[¶ 5] The circuit court denied the motion, holding that the constitution guarantees only the right to trial by an impartial jury, that it is up to the legislature to determine the mechanism for compiling lists of potential jurors and that, pursuant to Wyo. Stat. Ann. § 1–11–129 (LexisNexis 2001), the legislature has given the courts broad discretion in compiling juror lists so long as the integrity of the system and a random selection process are preserved.

[¶ 6] The case proceeded to trial, and Curtis was convicted on both counts. He appealed to district court, where he again raised the issue of the propriety of selecting the jury pool from only half the county. After briefing by the parties, the district court reversed the decision of the circuit court. While noting that the circuit court's reasons for dividing the county in half were valid, the district court held that Wyoming statutory law requires that juror lists be comprised of persons from all parts of the county.

[¶ 7] The State timely filed a petition for writ of review of the district court's order.

## STANDARD OF REVIEW

[¶ 8] We review a district court's statutory interpretation de novo. *Basin Elec. Power Coop. v. Bowen,* 979 P.2d 503, 506 (Wyo.1999). The primary objective in interpreting statutory language is to ascertain and effectuate legislative intent. *US West Communications, Inc. v. Public Serv. Comm'n,* 988 P.2d 1061, 1064 (Wyo.1999). Legislative intent is ascertained initially and primarily from the words used in the statute. *Wyoming Cmty. College Comm'n v. Casper Cmty. College Dist.,* 2001 WY 86, ¶ 16, 31 P.3d 1242, ¶ 16 (Wyo.2001). We look first to the plain and ordinary meaning of the words used in the statute. *Id.* at ¶ 17, 31 P.3d 1242. When the words are clear and unambiguous, a court impermissibly risks substituting its own views for the intent of the legislature if it attempts to interpret or construe the statute on any basis other than the language used by the legislature. *Id.* at ¶ 16, 31 P.3d 1242. Where statutory language conveys a clear and definite meaning, this court neither faces the need nor acquires the license to construe the statute. *US West,* at 1064, citing *Matter of SYM,* 924 P.2d 985, 987 (Wyo. 1996).

[¶ 9] A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Wyoming Comty. College Comm'n,* ¶ 17. A statute is ambiguous if it is vague, uncertain, or subject to·varying interpretations. *Id.* While differing opinions as to the meaning of a

statute are not conclusive of ambiguity, they may be evidence of ambiguity. *Id.* Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id.*

[¶ 10] In interpreting statutory language, we review all parts of the statute in pari materia, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. *Matter of Interest of WJH*, 2001 WY 54, ¶ 16, 24 P.3d 1147, ¶ 16 (Wyo.2001). We will not interpret statutes in a manner which renders any portion meaningless or produces absurd results. *Id.*

## DISCUSSION

[¶ 11] The State argues that Wyoming law does not require juror lists to be comprised of residents from all parts of the county. Rather, the State contends, Wyoming law provides for two alternative methods of compiling juror lists: first, Wyo. Stat. Ann. § 18–3–402(a)(xix) (LexisNexis 2001) requires the clerk of court to compile a list of all registered voters in the county and, second, Wyo. Stat. Ann. § 1–11–129 (LexisNexis 2001) gives the courts discretion to modify the procedure set forth in § 18–3–402(a)(xix) and to compile a list by other means insuring the integrity of the system and a random selection process. The State contends that the method used by the court in this case falls within the latter statutory provision.

[¶ 12] The statutory provisions at issue here provide as follows:

§ 18–3–402. Duties generally.

(a) The county clerk shall:

. . .

(xix) Compile a list of all persons whose names appear on the official register of voters and who appear to have the qualifications to serve as trial jurors. The list shall state the name and address of each person, be made in triplicate, and be certified by the county clerk. Two (2) copies of the list shall be delivered to the clerk of the district court by the county clerk on or before March 1 of each year, and one (1) copy shall be filed by the county clerk as a permanent record. The lists certified to the clerk of the district court may be in such form as

to enable the names to be separated into suitable ballots for use by the clerk of court as provided by law[.]

§ 1–11–129. Alternative procedure.

The procedures for compiling and maintaining jury lists, jury ballots and jury boxes, and for drawing jurors, may be modified by the court to permit the compilation and maintenance of jury lists and ballots and for the drawing of jurors by any manual, mechanical, electronic or other means calculated to insure the integrity of the system and a random selection process.

[¶ 13] Looking first at § 18–3–402(a)(xix), the language clearly and unambiguously states that the list compiled by the county clerk must contain the names of *all* persons who appear on the voter registration list. The voter registration list contains the names of all registered voters in the particular county (not just a portion of the county) so including all persons on that list on the juror list necessarily results in a countywide jury list. Thus, under this provision of Wyoming law, the list may not be restricted only to those persons on the voter registration list who reside in the northern half of the county. The statute clearly and unambiguously requires the inclusion of all registered voters in the county.

[¶ 14] However, § 1–11–129 authorizes the courts to modify the procedures for compiling and maintaining jury lists and seems to allow the selection of jurors by any means so long as the integrity of the system and randomness of the process are preserved. Read by themselves §§ 18–3–402(a)(xix) and 1–11–129 suggest that the legislature intended to provide two separate and distinct methods for compiling lists of potential jurors, one addressed to the clerk of court and another addressed to the courts themselves.

[¶ 15] Wyo. Stat. Ann. § 1–11–106 (Lexis 1999) supports this conclusion. That section provides in pertinent part as follows:

(a) The list of persons qualified to serve as trial jurors, certified and delivered to the clerk of the district court in accordance with W.S. 18–3–402 *or* a list of persons compiled under an alternate procedure

pursuant to W.S. 1–11–129, is the base jury list for the district court, the county court and justice of the peace courts[.]

(Emphasis added.)

█ [¶ 16] This provision clearly and unambiguously states that there are two alternative methods for compiling juror lists— the list compiled by the county clerk in accordance with § 18–3–402 (all registered voters in the county) *or* a list compiled according to procedures established by the courts in accordance with § 1–11–129. Juror lists compiled in compliance with either one of these alternatives constitute the base jury list for all courts in the particular district.

█ [¶ 17] Curtis concedes that these statutory sections provide alternate methods of selecting juries in Wyoming courts. He contends, however, that Wyoming law does not give courts the discretion to limit juror lists to residents of only one part of the county because such a limitation destroys the randomness of the selection process. In support of this contention, he quotes the definition of "random" contained in *Webster's Third International Dictionary* (1971)— lacking or seeming to lack a regular plan; marked by absence of bias; chosen at random; a true sample of the whole list; having the same probability of occurring as every other member of a set. At 1880.

[¶ 18] We are not persuaded that the circuit court's method of drawing jurors from either the northern or the southern half of the county, depending upon where the case arose, destroys the randomness of the selection process. Nothing in the record before the court suggests the existence of any bias or regular plan in how the names of potential jurors are drawn from each half of the county. The record likewise is devoid of any evidence showing that the final list is not a true sample of the whole list of potential jurors from the particular half of the county. There is no evidence that the name of one potential juror in the particular half of the county has more probability of occurring than any other. Nor is there evidence of any improper motive in drawing the line between north and south, a line that has been drawn not just for this case but for all cases arising in Lincoln County. It is not as if there are

people in Lincoln County who are systematically eliminated from jury service forever under the circuit court's method. All registered voters in the county are still potential jurors, they simply serve in the circuit court nearest their home. In a large county, like Lincoln County where there are two circuit courts located one hundred miles apart, this selection process makes practical sense. Absent some evidence to support the assertion that the circuit court's method for drawing jurors destroys the randomness of the process, it appears that randomness remains intact although selection is from a smaller pool.

[¶ 19] No claim is made in this case that anyone in the pool or on the eventual jury was not qualified to serve. This is not a situation where the defendant was tried by a jury made up of jurors from outside the area where the offenses were alleged to have been committed—both the defendant and the jurors who heard the case reside in the northern half of Lincoln County. There is no evidence, nor is it even really argued, that the selection process failed to provide Curtis with a jury drawn from a source representative of a fair cross section of the community in which the offenses were alleged to have occurred. Under these circumstances, we find no error in the selection process.

## CONCLUSION

[¶ 20] The order of the district court is reversed.

GOLDEN, J., dissenting, in which HILL, C.J., joins.

[¶ 21] In a criminal prosecution in the County Court of Lincoln County, over his objection, Richard E. Curtis was tried by a jury the members of which were initially gathered from only the northern half of that county. Curtis maintains that the Wyoming Legislature requires that the jurors be gathered from the entirety of that county.

[¶ 22] Having carefully read the pertinent statutes in the manner required by this Court's rules of statutory construction, I have concluded that the Wyoming Legislature requires the courts to gather trial jurors

from the entire county. All agree that we are to find the answer to the question by reading Wyo. Stat. Ann. § 18–3–402(a)(xix), Wyo. Stat. Ann. § 1–11–106(a), and Wyo. Stat. Ann. § 1–11–129.

[¶ 23] Let us first read § 18–3–402(a)(xix). Title 18 concerns counties; chapter 3 concerns county officers; article 4 concerns county clerks, and section 402 concerns the duties of a county clerk. Specifically, § 18–3–402(a)(xix) reads in pertinent part that the county clerk shall

[c]ompile a list of all persons whose names appear on the official register of voters and who appear to have the qualifications to serve as trial jurors. The list shall ... be certified by the county clerk.... [T]he list shall be delivered to the clerk of the district court by the county clerk.... The lists ... may be in such form as to enable the names to be separated into suitable ballots for use by the clerk of court as provided by law.

As the majority opinion correctly observes, the list compiled by the county clerk under this section must contain the names of *all* persons who appear on the voter registration list. And, further, the voter registration list contains the names of all registered voters in the particular county (not just a portion of the county) so including all persons on that list on the juror list necessarily results in a countywide jury list. Thus, under this section, the list may not be restricted only to those persons on the voter registration list who reside in the northern half of the county. The section requires the inclusion of all registered voters in the county.

[¶ 24] Let us next read § 1–11–106(a). Title 1 concerns the Code of Civil Procedure; chapter 11 concerns Trial by Jury; article 1 concerns Qualifications, Selection and Empaneling of Juries; and section 106 is entitled "Jury list, preparation of ballots for jury box, drawing jury panel, certificate and summons." Specifically, § 1–11–106(a) reads in pertinent part that the county-wide list delivered by the county clerk to the district court clerk

in accordance with W.S. 18–3–402 or a list of persons compiled under an alternate

procedure pursuant to W.S. 1–11–129, is the base jury list....

[¶ 25] Let us now quickly read § 1–11–129 so we know about this "list ... compiled under an alternate procedure pursuant to W.S. 1–11–129." Section 129 entitled "Alternate procedure" reads

*The procedures for compiling and maintaining of jury lists,* jury ballots and jury boxes, *and for drawing jurors, may be modified* by the court *to permit the compilation and maintenance* [of the items mentioned above] and for the drawing of jurors *by any manual, mechanical, electronic or other means* calculated to insure the integrity of the system and a random selection process.

(emphasis added). The only meaning this provision conveys to me is that the court may modify compilation and maintenance *procedures* and juror drawing *procedures* to permit those *procedures* to be physically performed by manual means, or mechanical means, or electronic means or other means calculated to insure the integrity of the system and a random selection process. The section obviously focuses on "procedures" and performing those "procedures" manually, mechanically, electronically or some other similar way. Webster's Dictionary defines "procedure" as "a particular way of accomplishing something or of acting." Webster's Collegiate Dictionary 926 (10th ed.2000). It defines "means" as "something useful or helpful to a desired end." *Id.* at 718. In other words, the sense of this section concerns simply the physical act of compiling and maintaining jury lists and jury ballots and boxes and the physical act of jury drawing. So read, this section contains no authorization for a court to compile a juror list from a geographical area less than the entire county as provided in § 18–3–402(a)(xix).

[¶ 26] Returning, then, to § 1–11–106(a) in which reference is made to the list compiled under an alternate Section 129 procedure, we clearly understand that the base jury list is one physically compiled by any means manually, mechanically, electronically, or otherwise calculated to insure system integrity and a random selection process and is from the entire county.

[¶ 27]   I would reverse and remand to the circuit court for further proceedings in accordance with this dissenting opinion.