2009 WY 28

**In the Interest of MM, a Minor.**

**MM, Appellant (Respondent),**

v.

**The State of Wyoming, Department of Family Services, Appellee (Petitioner).**

**No. S–08–0120.**

Supreme Court of Wyoming.

March 3, 2009.

Representing Appellant: David M. Clark of Worrall & Greear, P.C., Worland, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Elizabeth B. Lance, Assistant Attorney General. Argument by Ms. Lance.

Guardian Ad Litem: Andrea L. Earhart of McCarty and Reed, Cody, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] MM (Father) appeals from the adjudication order incorporating the jury's verdict that MM (the child) was abused while in his custody. He claims the juvenile court erred by refusing to dismiss the case because the State failed to timely disclose exculpatory evidence. We conclude that the juvenile court properly addressed, pursuant to the Wyoming Rules of Procedure for Juvenile Courts, the State's failure to disclose the evidence by ordering production of the information to Father. In light of the State's production of the evidence to Father prior to trial and the strength of the State's case, we further conclude Father failed to show a violation of his due process rights. Consequently, we affirm.

## ISSUE

[¶ 2] Father presents a single issue on appeal:

Whether the District Court erred by refusing to dismiss the case for the State's failure to timely disclose exculpatory evidence?

The State and guardian ad litem present similar issues.

## FACTS

[¶ 3] On October 12, 2007, the child's daycare provider reported to authorities that the two year old child's vaginal area "appeared to be swollen and bruised" and she had a "goopy" vaginal discharge. A Cody Police Department detective went to the daycare and

looked at the reported injury. She took the child into protective custody and arranged for her to be transported to the emergency room at the local hospital.

[¶ 4] The emergency room physician performed a sexual assault examination. The doctor noted systemic discoloration of the child's labia compatible with potential sexual assault and recommended that the child be seen by her pediatrician. Photographs were taken of the child's genitals during the emergency room examination.

[¶ 5] On October 16, 2007, the child was examined by her pediatrician. He did not see any bruising or discoloration of the child's genitals. The pediatrician did, however, note that she had labial laxity which was a change from the last time he had examined her. He considered the change to be a "red flag" for abuse. He stated the child's condition was consistent with non-traumatic genital manipulation and penetration.

[¶ 6] The State filed a petition pursuant to Wyo. Stat. Ann. § 14–3–403, *et. seq.* (LexisNexis 2007) alleging the child had been abused. Father and VM (Mother) denied the allegations, and a trial was scheduled for February 7 and 8, 2008. A few days prior to the trial, Mother's counsel received a police report which referred to a telephone conversation between the State and the Kempe Children's Center in Colorado on December 12, 2007. The State apparently contracted with the Kempe Children's Center for consultations in child abuse cases. The police report indicated that, after reviewing the photographs of the child's genitals, a doctor with the Kempe Children's Center could not see an injury to the child. The report also stated that the conversation had been recorded by the State.

[¶ 7] Mother and Father filed a motion to dismiss the neglect petition on the basis that the recording included exculpatory evidence and the State had failed to disclose it in a timely manner as required by the Wyoming Rules of Procedure for Juvenile Courts. The juvenile court denied the motion to dismiss but ordered the State to produce the exculpatory portions of the recording to the respondents. The State produced the entire recording to the respondents on the day before the trial commenced. Over the State's objection, the recording was admitted as evidence at trial and the entire conversation was played for the jury.[1]

[¶ 8] The jury returned its verdict finding the allegations that the child was abused while in the custody of Mother and Father to be true, and the juvenile court entered an adjudication order consistent with the jury's verdict. Father appealed.

## DISCUSSION

[¶ 9] Father claims that the State's failure to produce the recording of the conversation with the Kempe Children's Center to the respondents in a timely manner violated the Wyoming Rules of Procedure for Juvenile Courts and the constitutional mandates set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He argues the State's action compelled dismissal of the abuse petition.

[¶ 10] W.R.P.J.C. 3 states in relevant part:

> (b) *Discovery by the State.* The State shall without the necessity of a request by the Respondent, and within thirty (30) days of service of the applicable petition, furnish to the Respondent and guardian ad litem:
>
> (1) Any material or information within the knowledge, possession or control of the State which tends to negate the involve-

---

1. Prior to trial, the respondents moved for admission of the recording with the parts that did not include exculpatory evidence redacted. The State objected and filed a motion in limine, arguing the recording was not subject to disclosure because it was privileged work product. The guardian ad litem maintained that, if the recording was admitted into evidence, it should be admitted in its entirety. The juvenile court admitted the entire recording as evidence at trial.

In addition to the exculpatory evidence, the recording includes discussion of the State's prior involvement with the family, the child's special needs, the inability of the parents to care for her, how best to protect the child, and other matters. Father does not argue on appeal that the district court's decision to admit the entire recording, including the portions which were not exculpatory, was erroneous.

ment of the Respondent as to the offense charged;

. . . .

(c) *Compliance by the State.* The State may comply with this rule by advising the Respondent in writing or on the record, that the Respondent may inspect the discoverable portions of the State's file and by allowing such inspection to occur at any time during normal business hours. However, if the State has any exculpatory information specified in this Rule, the State shall promptly furnish such information to the Respondent, whether or not the Respondent has made the inspection provided for by that subsection.

(d) *Matters Not Subject to Discovery.* This section does not require a party to disclose:

(1) Any documents to the extent that they contain the opinions, theories, conclusions, or other work product;

. . . .

(f) *Procedure for Discovery, Time.* The State shall make the disclosure required under this Rule, and may request reciprocal discovery within thirty (30) days from the service of the petition. The Respondent shall furnish the discovery required under this Rule within thirty (30) days after a request is made. The court, for good cause shown, may extend the time for discovery. If discovery is not furnished as required, a motion to compel discovery may be filed which shall specify the items which have not been furnished. A hearing shall be held no later than three (3) days after the motion is filed. If, at any time during the proceedings, it is brought to the attention of the court that a party has failed to comply with this Rule or an order issued under this Rule, the court may:

1. Order such party to permit the discovery of the matters not previously disclosed;

2. Strike the testimony to which the undisclosed matter relates;

3. Grant a reasonable continuance;

4. Prohibit the party from introducing in evidence the matter not disclosed;

5. Grant a mistrial; or

6. Enter such other order as may be appropriate under the circumstances.

(g) *Continuing Duty to Disclose.* If, subsequent to compliance with a request made under this Rule or with any order compelling discovery, a party learns of additional information previously requested and required to be furnished, he shall promptly furnish the information to the other party or his counsel. If the additional information is learned during a hearing, he shall, in addition to furnishing the information promptly to the other party or his counsel, notify the court that such matter is being furnished.

. . . .

(j) *Timely Disclosure Required.* All matters and information to which a party is entitled must be disclosed in time to permit its beneficial use.

[¶ 11] We interpret court rules applying the same principles used to interpret statutes. *See, Cotton v. McCulloh,* 2005 WY 159, ¶ 14, 125 P.3d 252, 257–58 (Wyo.2005). *See also, Andersen v. Hernandez,* 2005 WY 142, ¶ 7, 122 P.3d 950, 951 (Wyo.2005). Our rules of statutory construction are well-known:

> We first decide whether the statute is clear or ambiguous. This Court makes that determination as a matter of law. A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. [v. Wyoming State Board of Equalization],* 813 P.2d [214,] 220 [ (Wyo.1991) ]. A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." 813 P.2d at 219–20.
>
> If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. . . . We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in *pari materia.*

*State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1166 (Wyo.1994). If we determine that the statute is ambiguous, we resort to general principles of statutory construction to de-

termine the legislature's intent. *State v. Bannon Energy Corporation*, 999 P.2d 1306, 1308–09 (Wyo.2000) (some citations omitted); *see also Wyodak Resources Development Corporation v. Wyoming Department of Revenue*, 2002 WY 181, ¶ 9, 60 P.3d 129, ¶ 9 (Wyo.2002).

*Cotton*, ¶ 14, 125 P.3d at 257–58 (some citations omitted).

[¶ 12] Rule 3(b)(1) clearly required the State to notify the respondents of all information which tended to negate their involvement in the charged offense. Rule 3(c) required the State to promptly furnish any exculpatory information to the respondents, and Rule 3(g) made the duty to disclose continuing.

[¶ 13] In the recording of the telephone conversation, a Kempe Children's Center doctor repeatedly stated that he could not see any injury to the child in the photos provided to him. In fact, he went so far as to say that the pictures did not show any abnormality in the child's genitalia. The doctor also stated that he did not know why a sexual assault examination had been performed at the emergency room, measurements of labial laxity are not diagnostic of child abuse, and he did not understand the pediatrician's diagnosis of non-traumatic genital manipulation and penetration. Unquestionably, this evidence tended to negate Mother's and Father's involvement in any alleged abuse of the child and was, therefore, exculpatory.

[¶ 14] In the district court, the State claimed it was not required to produce the recording because it was privileged work product and not subject to discovery under W.R.P.J.C. 3(d)(1). The court ruled that the State had waived the work product privilege when the conversation and recording were referenced in the police report and ordered the State to produce any exculpatory evidence contained in the recording to the respondents. Although the State seems to vaguely argue on appeal that the evidence was work product, it does not provide sufficient argument or authority for us to review the district court's decision on that basis. Thus, we will assume, for the purposes of this case, that the evidence was not work product and was subject to disclosure.

[¶ 15] Rule 3(f) provides several options to the juvenile court once it learns that a party did not comply with its discovery obligations. In other contexts, we have stated that the trial court has discretion in determining the appropriate remedy or sanction for violation of discovery requirements. *Lawson v. State*, 994 P.2d 943, 946–47 (Wyo. 2000) (criminal); *Gooder v. Roth*, 788 P.2d 611, 612 (Wyo.1990) (civil). The language of Rule 3(f) clearly indicates that the juvenile court is likewise intended to have broad discretion in crafting a remedy for a discovery violation. Accordingly, we conclude that the appropriate standard for reviewing the juvenile court's decision is the abuse of discretion standard.

[¶ 16] In determining whether the trial court abused its discretion, "the ultimate issue is whether or not the court could reasonably conclude as it did." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998).

> [D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal. It is also well established that a district court judgment may be affirmed on any proper legal grounds supported by the record. However, where the law imposes a duty on the district court to make findings on the record, we will not speculate as to the reasons for the decision.

*English v. State*, 982 P.2d 139, 143 (Wyo. 1999) (citations omitted).

*Lawson*, 994 P.2d at 947.

[¶ 17] In accordance with Rule 3(f)(1), the juvenile court ordered the State to provide the information to the respondents. Other options available to the court under the circumstances presented here included granting a "reasonable continuance" or entering "such other order as may be appropriate under the circumstances." W.R.P.J.C. 3(f)(3) and (6). Presumably, Father's request for a dismissal would fall with-

in the latter provision. At the hearing on the motion to dismiss, Father's attorney indicated that he could not waive the right to a speedy adjudicatory hearing, thereby eliminating a continuance as a remedy for the discovery violation.

[¶ 18] Father argues that dismissal was appropriate because he did not have the evidence in time to make beneficial use of it as required by Rule 3(j). The record indicates otherwise. The recording was played for the jury and the information was available for the respondents to use in cross examining the State's witnesses. The respondents also referred to the evidence in opening statement[2] and closing argument. Consequently, the jury had the evidence from the recording to weigh against the State's evidence in determining whether the State had proven that Father abused the child.

[¶ 19] At the hearing on the motion to dismiss, Father asserted that if the information had been disclosed earlier, the respondents could have called the participants in the conversation as witnesses in their defense. On appeal, Father claims generally that "[h]ad the State timely disclosed the evidence, [he] would have been afforded a reasonable opportunity to investigate further, obtain witnesses to vouch for the reliability of the exculpatory evidence, and fully prepare for its effective use on cross examination." However, Father does not indicate specifically how he could have used or developed the evidence to provide a better defense or what the live testimony would have accomplished that the recording did not. Furthermore, although Father could have requested a continuance in order to complete those tasks, he declined that option. Under these circumstances, we cannot say that the district court abused its discretion by imposing the sanction it did—ordering production of the evidence, or by refusing to impose Father's requested sanction—dismissal.

[¶ 20] Father also claims that his constitutional rights under *Brady,* 373 U.S. 83, 83 S.Ct. 1194, were violated when the prosecution withheld exculpatory evidence. *See also, Davis v. State,* 2002 WY 88, 47 P.3d 981

(Wyo.2002). The parties do not direct us to any decision of this Court or the United States Supreme Court which expressly rules on whether the principles for criminal cases articulated in *Brady* apply in civil child abuse proceedings. Nevertheless, in light of the fundamental right to associate with family, *FML v. TW,* 2007 WY 73, ¶ 6, 157 P.3d 455, 459 (Wyo.2007), we assume without deciding that *Brady* applies for the purposes of this case. *See generally, LP v. Natrona County Dep't of Pub. Assist. and Social Serv's,* 679 P.2d 976, 992–94 (Wyo.1984) (indicating that, under appropriate circumstances, *Brady* due process principles may apply in parental termination proceedings).

[¶ 21] In *Brady,* the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. To establish a violation under *Brady,* Father had the burden of proving: 1) the prosecution suppressed evidence; 2) the evidence was favorable to the defense; and 3) the evidence was material because it is reasonably probable that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Davis,* ¶ 16, 47 P.3d at 985; *Wilkening,* ¶ 7, 172 P.3d at 386–87. The determination of whether the evidence the State withheld was material and whether the failure to disclose it to the defense affected the outcome of the trial involve mixed questions of fact and law. *Whitney v. State,* 2004 WY 118, ¶ 58, 99 P.3d 457, 476 (Wyo. 2004). A claim of failure to disclose evidence in violation of *Brady* is reviewed *de novo. Id.*

[¶ 22] The evidence contained in the recording was obviously favorable to the defense as the Kempe Children's Center doctor repeatedly stated that he could not see any injury to the child in the photos and, in fact, went so far as to say that the pictures showed normal female genitalia. The de-

---

**2.** Father waived his right to make an opening statement. Mother, however, referred to the Kempe Children's Center recording in her opening statement.

fense is, however, required to show more than the evidence was exculpatory in order to establish a due process violation under *Brady*.

[¶ 23] Father is obligated to establish that the State suppressed the evidence in violation of the *Brady* principles. The evidence of the Kempe Children's Center conversation was disclosed to the respondents the day before trial. In *Thomas v. State*, 2006 WY 34, ¶ 16, 131 P.3d 348, 353 (Wyo. 2006), we stated:

> The delayed disclosure of *Brady* materials is not always grounds for reversal. *Whitney*, 2004 WY 118, ¶ 58, 99 P.3d at 476. As long as disclosure is made before it is too late for the defendant to make use of the evidence, due process is satisfied. *Id. Brady* is not violated when the material is available to the defendant during trial. *Id.* The essence of *Brady* is the discovery of information after the trial, which was known to the prosecution but unknown to the defense during the trial. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Thus, where exculpatory evidence is discovered during the trial and defense counsel has the opportunity to use it in cross-examination, closing argument, or other parts of the defense case, courts generally do not find a due process violation. *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir.1997); *Young v. State*, 849 P.2d 754, 765 (Wyo.1993).

[¶ 24] In *Thomas*, we concluded that the defendant's due process rights were not violated when the State revealed exculpatory evidence to the defense on the second and third day of trial. Because the defense was able to use the evidence for cross examination and argument during trial and did not request a continuance, there was no violation of *Brady*. *Id.*, ¶¶ 17–18, 131 P.3d at 353–54. In this case, the State produced the recording to the respondents the day before trial and it was played for the jury. The respondents referred to the recording in opening statement, had the opportunity to cross examine the State's witnesses with the information contained in it and emphasized it in closing arguments. Moreover, Father did not request a continuance in order to further explore the exculpatory evidence. Thus, he has not shown the evidence was improperly suppressed in accordance with *Brady*.

[¶ 25] Further, in order to establish a *Brady* violation, the evidence must be material in the sense that there is a reasonable probability that, had the evidence been disclosed to the defense in a timely manner, the result of the proceeding would have been different. Consequently, we must consider the exculpatory evidence in the context of the other evidence presented at trial.

[¶ 26] The State called a number of witnesses to testify about their eye-witness observations of the child. The daycare provider testified that on Wednesday, October 10, 2007, the child returned to daycare after being absent for several days. The child was unusually tired, aggressive and unhappy. The daycare provider testified that the child resisted having her diaper changed and she noticed the child's genitalia were red, swollen, and elongated and she was experiencing vaginal discharge. She asked other daycare workers to look at the child and documented her concerns. The next day, the child was still behaving differently than usual and the daycare provider noticed bruising of the labia. On Friday, October 12, 2007, the child would not let the daycare provider clean her after a bowel movement, so she bathed the child. The daycare provider then called the authorities.

[¶ 27] The detective testified that she observed the child's vaginal area on October 12, 2007. She described the area as swollen with red marks on the labia. She stated that it looked like the child had been injured. Consequently, she took the child into protective custody.

[¶ 28] The DFS caseworker transported the child to the emergency room. She stated that she was present during the emergency room doctor's examination of the child and saw "severe" redness and what looked like bruising on the outside of the child's labia. She also described the vaginal area as swollen.

[¶ 29] The emergency room doctor testified that, based upon the history provided to

him by the detective, he performed a sexual assault exam. None of the tests revealed the presence of any foreign bodily fluids, such as semen. He completed a schematic diagram of the child's genitalia, indicating he observed discoloration of the labia, although he stated that he could not call it bruising. The emergency room doctor stated the discoloration was consistent with potential sexual assault. He also testified that, although his examination was limited because of the child's size, he did not observe an obvious hymenal tear. Because he was not a pediatric specialist, he recommended she be examined by her pediatrician.

[¶ 30] The child's pediatrician examined her on October 16, 2007. During the visit, the child's behavior was different than normal; she was angry and physically aggressive. The pediatrician did not see any redness, bruising or inflammation of her genitals. However, he noticed the labia major, which protect the opening of the vagina, were apart resulting in a four millimeter space. This labial laxity was a change from when he had examined her a few months before. He concluded that his exam was "consistent with non traumatic genital manipulation and penetration." The pediatrician was questioned about the Kempe Children's Center doctor's opinion that he could not see an injury and labial laxity was not diagnostic of sexual abuse. He stated that his research indicated that labial laxity was an indicator of abuse and his diagnosis and concerns were due to the change in the child's genitalia from the last time he examined her.

[¶ 31] The child's foster mother also testified at the trial. She had cared for the child for "a long time" prior to the events which led to the abuse petition in this case. The foster mother, who was a registered nurse, testified that she had observed the child's genital area in the emergency room. She stated the area was "very red and discolored, puffy and stretched out." Based upon her observations, she testified that she thought that the child had been hurt—"that something terrible had happened to her." The foster mother took physical custody of the child after she left the emergency room.

She stated that, during the following week, the child's behavior was different than normal. She also stated that the child's vaginal opening was still "gaping" at the time of trial.

[¶ 32] The jury weighed the State's evidence against the exculpatory evidence contained in the recording from the Kempe Children's Center and Mother and Father's testimony that they had not injured the child. The strength of the exculpatory evidence was reduced because the Kempe Children's Center doctor did not examine the child at the time of the alleged abuse. His testimony, or that of any other medical expert, would have been limited to a review of the photographs and medical records. Consequently his opinion was subject to the criticism that, unlike the emergency room doctor and the pediatrician, he did not actually see the alleged injury. In fact, the Kempe Children's Center doctor indicated that the doctors who actually examined the child might have seen something different or might have reached a different conclusion than he did after reviewing the photographs and medical records. On this record, we cannot conclude that there is reasonable probability that, had the evidence been disclosed to the defense in a timelier manner, the result of the proceeding would have been different. Consequently, Father's due process rights were not violated by the State's actions and the district court did not err by denying his motion to dismiss.

[¶ 33] Affirmed.