2010 WY 138

James E. BELLIS and Bette Lu Bellis, husband and wife, Appellants (Defendants/Plaintiffs),

v.

Ronny L. KERSEY and Peggy J. Kersey, husband and wife, Appellees (Plaintiffs),

and

Benjamin H. Howard, Jr., Benjamin H. Howard, IV, Rocky Mountain Timberlands, Inc., and General Education Foundation, Inc., Appellees (Defendants).

No. S–10–0013.

Supreme Court of Wyoming.

Oct. 26, 2010.

Representing Appellants: Frank J. Jones of Wheatland, Wyoming.

Representing Appellees Ronny L. Kersey and Peggy J. Kersey: Gay Woodhouse of Woodhouse Roden, LLC, Cheyenne, Wyoming.

Representing Appellees Benjamin H. Howard, Jr., Benjamin H. Howard, IV and Rocky Mountain Timberlands, Inc.: William H. Vines of Wheatland, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The district court consolidated two civil actions involving ownership disputes among neighboring landowners in Platte County, Wyoming. After a bench trial, the district court concluded that the appellants had not proven ownership of the disputed land through adverse possession, ordered their ejectment from a portion thereof, to which portion title was also quieted in the record owners, and ordered the appellants to pay trespass damages and costs. This appeal followed. We conclude that the district court's findings of fact are not clearly erroneous on some issues, but are clearly erroneous on other issues, and we therefore affirm in part, and reverse in part.

## PARTIES AND PLEADINGS

[¶ 2] So as better to present the detailed facts and the issues, we will briefly introduce the parties and identify their primary pleadings. The appellants are James E. Bellis and Bette Lu Bellis (the Bellises). They were the plaintiffs in a quiet title and declaratory judgment action filed on April 4, 2006, against Torey S. Hanks and Julie B. Hanks (the Hanks), Benjamin H. Howard, Jr. and Benjamin H. Howard IV (the Howards), and Rocky Mountain Timberlands, Inc. (RMT).[1] The Hanks, Howards, and RMT filed an Answer denying the Bellises' claims, but presented no counterclaims. Prior to the filing of that action, the Bellises were the defendants in an action filed by Ronny L. Kersey and Peggy J. Kersey (the Kerseys) alleging trespass and seeking quiet title, injunctive relief, and ejectment. In their counterclaim against the Kerseys, the Bellises asked that title be quieted in them. The district court consolidated the two cases because both disputes involved a contiguous area that had been under common ownership and the Bellises' claim of ownership to the disputed area of each parcel was based on the same evidence in regard to adverse possession. The following map shows the lands in question, with the shaded area in Sections 3 and 10 east of the Bellises' 1997 purchase and west of the fence being the disputed area.

---

1. The Hanks later sold their land to General Education Foundation, Inc. (GEF). GEF apparently made no appearance in either case, but appears as a named party on some, but not all, pleadings. One witness did testify on behalf of GEF.

## ISSUES[2]

[¶3] 1. Did the district court err in ruling against the Bellises on their claim of adverse possession?

2. Did the district court err in ordering the ejectment of the Bellises from the Kerseys' tract?

3. Did the district court err in denying the Bellises' quiet title claim, and in granting the Kerseys' quiet title claim?

4. Did the district court err in granting trespass damages to the Kerseys?

5. Did the district court err in granting costs to the Kerseys?

## FACTS

[¶4] Because the primary claim presented to the district court was one of adverse possession, the trial transcript and appellate briefs present a detailed history of the ownership and use of the disputed lands. We will resolve this primary issue upon grounds somewhat different from those relied upon by the district court, so we will focus upon the facts that are relevant to that disposition.

[¶5] The disputed land and the surrounding area was developed as a ranch beginning with the arrival of Millard Coleman in 1888. As of April 30, 1987, Rowena Coleman owned the subject lands in Sections 3 and 10, while Charles and Jean Coleman owned the subject lands in Section 4. On that date, Charles and Jean Coleman sold to the Bellises a parcel of

2. The Bellises also claim that the district court erred in not finding that they had proven ownership of the disputed area via the doctrine of recognition and acquiescence. See Kimball v. Turner, 993 P.2d 303, 308–09 (Wyo.1999), and Carstensen v. Brown, 32 Wyo. 491, 236 P. 517 (1925). We note, however, that said doctrine was not raised in the Bellises' pleadings, was contrary to the Bellises' factual position at trial,

and was not addressed in the district court's findings of fact, conclusions of law, or final order. Therefore, we conclude that the issue was not "tried by express or implied consent of the parties" as contemplated by W.R.C.P. 15(b), and we will not address it separately in this appeal, except to say that the resolution reached herein would result in its fate being the same as the fate of the adverse possession claim.

land that, for the purposes of this inquiry, had as its eastern boundary the section line between Sections 3 and 4. In other words, that deed conveyed nothing in Section 3 or in Section 10.

[¶ 6] James Bellis testified that, over the following years, the Bellises ran cattle, hunted upon, and leased out not just their land in Section 4, but also the land in Sections 3 and 10 west of the fence shown on the above map. Mr. Bellis further testified that Charles Coleman knew the fence was not on the property line, but recognized the Bellises' use of the now-disputed area under "the old fence law," meaning adverse possession.

[¶ 7] In 1997, the Bellises learned that the Colemans intended to sell their property in Sections 3 and 10. Mr. Bellis and Mr. Coleman discussed resolving the boundary issues in those sections, to enable the Colemans to sell the property. Not wanting to go to the expense of a formal survey, the two men agreed upon a straight diagonal line running northeasterly from the section corner (3, 4, 9, 10) as the boundary between their properties. That diagonal line, as described in the ensuing deed from the Colemans to the Bellises, is shown on the above map as the western edge of the disputed lands. The Bellises paid the Colemans $18,000 for the additional lands not described in their earlier deed. Significantly, Mr. Bellis testified that he "was purchasing a settlement" and "was resolving the entire issue," and that "we couldn't go for adverse possession for another month [because] [i]t was not ten years up."

[¶ 8] In summarizing the Bellises' position, Mr. Bellis testified that (1) the 1987 deed "[was] a perfectly good deed, except in those days fence lines and property descriptions on section lines do not match[,]" and (2) the boundary line in the 1997 deed was erroneous in that it should have gone to the northeast corner of the quarter section, rather than to the center of the northern border

of that quarter section, meaning it should have encompassed the disputed area.[3]

[¶ 9] The party to whom the Colemans intended to sell, and did sell, their property in Sections 3 and 10, was RMT, one of the current appellees. That transaction took place on May 20, 1997. Subsequently, the Kerseys, the Howards, and GEF obtained title to the tracts shown on the above map. Disputes over the property boundaries resulted in the Kerseys filing their action against the Bellises on June 23, 2005, and the Bellises filing their action against the Hanks, the Howards, and RMT on April 4, 2006. The details of those disputes are discussed at length in the trial transcript, but those details are not of significance to our resolution of this matter.

## STANDARD OF REVIEW

[¶ 10] We have often reiterated our standard of review upon the appeal of a district court's decision following a bench trial. Factual determinations are reviewed under a clearly erroneous standard, while conclusions of law are reviewed *de novo*. *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) (quoting *Life Care Ctrs. of Am., Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo. 2003)). We may affirm a district court's action upon any sustainable legal ground shown in the record. *Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 21, 114 P.3d 1268, 1279 (Wyo. 2005).

## DISCUSSION

### Did the district court err in ruling against the Bellises on their claim of adverse possession?

[¶ 11] In 1987, the Bellises purchased from the Colemans a portion of the

---

**3.** The Bellises did not seek reformation of the 1997 deed, perhaps because they did not allege mutual mistake in its drafting. Rather, Mr. Bellis suggested that the Colemans inserted "another description" in that deed and in selling their

property. *See, e.g., Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002); and *Gasaway v. Reiter*, 736 P.2d 749, 751 (Wyo.1987).

Colemans' ranch, including the land in Section 4 shown on the above map. Subsequent use by the Bellises of lands retained by the Colemans in Sections 3 and 10 to the east of Section 4 apparently led Mr. Bellis and Mr. Coleman to conclude in 1997 that there was some question as to the boundary between their respective properties in that area. Although Mr. Bellis does not challenge the correctness of the 1987 deed, he contends that the fence, rather than the section line, was always meant to be the eastern boundary of his property. His legal argument at trial was that the Bellises adversely possessed the disputed area.

[¶ 12] When Mr. Bellis and Mr. Coleman met in 1997 to discuss the Colemans' planned land sale, the two men discussed the Bellises' potential adverse possession claim. The Bellises did not pursue that claim, for two reasons. First, the ten-year statutory period had not passed, meaning the claim had not "ripened." And second, Mr. Coleman did not want to pay to survey the fence line for the purpose of establishing the western boundary of the property he could sell. Consequently, the Bellises and the Colemans resolved the difficulty with an agreement: the Bellises would pay $18,000 to extend the eastern border of their land to the diagonal line in Section 3 discussed above. This transaction was accomplished by payment of the money and execution and delivery of the deed.

[¶ 13] While nobody in this case has argued that the 1997 deed is ambiguous, parol evidence was admitted to explain its purpose. That evidence clearly shows that the intention of both the Bellises and the Colemans was to establish a boundary between their properties *that would allow the Colemans to sell the lands east of the boundary.* Mr.

Bellis, himself, repeatedly testified that such was their purpose. Given that purpose, and given the exchange of money for a warranty deed specifically identifying a property boundary lying entirely west of the fence—all of which took place before the period required to establish adverse possession—it simply cannot be said that the evidence can support the Bellises' position that they retained a claim to any property east of the deed's boundary line. Consequently, any adverse possession claim the Bellises could now assert would have had to begin after they accepted the 1997 deed. Inasmuch as the Kerseys brought their civil action in 2005, and the Bellises sued the other appellants in 2006, it is clear that the ten-year adverse possession period has not been proven. The ruling of the district court is affirmed on that ground.[4]

### Did the district court err in ordering the ejectment of the Bellises from the Kerseys' tract?

[¶ 14] The Kerseys amended their petition to seek ejectment of the Bellises from that portion of the disputed lands lying within the Kerseys' deeded tract. Ejectment, once a common-law remedy, is now codified at Wyo. Stat. Ann. § 1–32–202 (LexisNexis 2009):

In an action to recover real property it is sufficient if the plaintiff's petition states that he has a legal estate in and is entitled to possession of the real property, describing the same with sufficient certainty as to enable an officer holding an execution to identify it, and that the defendant unlawfully keeps him out of possession. It is not necessary to state how the plaintiff's estate or ownership is derived.

4. We acknowledge that W.R.C.P. 8(c) requires that affirmative defenses, including accord and satisfaction, must be pled affirmatively. In the instant case, however, the Bellises had the burden of establishing the elements of adverse possession before the appellees had the burden of raising or proving affirmative defenses. This case resembles *Thayer v. Smith,* 357 P.2d 1115, 1117 (Wyo.1960), where the nature of the issues and their presentation resulted in the question of accord and satisfaction being tried as part of the necessary evidence. In the instant case, it was actually Mr. Bellis who forwarded the theory that

the 1997 transaction was for the purpose of settling the boundary line. His complaint was not with the concept of settlement, but was, rather, with the description of the boundary line contained in the deed. His testimony was more reflective of an argument for reformation of the deed. The district court did not treat the 1997 agreement between the Bellises and the Colemans as an accord and satisfaction, or even as a settlement, but stated that it "extinguished" any claim the Bellises may have had to adverse possession of the property to the west of the new dividing line.

See Allen v. Houn, 30 Wyo. 186, 198, 219 P. 573, 577–78 (1923).

[¶ 15] The district court found that the Kerseys own the property described in their tract, concluded that the Bellises had not proven adverse possession of the disputed portion of that tract, and ordered the Bellises ejected therefrom. The Kerseys' proof that the Bellises were unlawfully keeping them from possession of the disputed land consisted largely of evidence that on June 15, 2005, Mr. Kersey and others were in the process of building a fence along the surveyed boundary when Mr. Bellis came out and commanded them to the leave the property, which they did. The Kerseys filed suit against the Bellises eight days later.

[¶ 16] In their brief on appeal, the Bellises have not presented an argument on the separate issue of ejectment, perhaps concluding that the issue of adverse possession would be determinative. Having reviewed the entire record, we certainly cannot conclude that the district court's findings of fact in regard to the ejectment claim are clearly erroneous, or that its conclusions of law are in error. The Kerseys held record title to the property, paid the property taxes, and attempted to possess the property, but were prevented from doing so by the Bellises, who had not perfected a claim to the property via adverse possession. We therefore affirm the order of ejectment.

### Did the district court err in denying the Bellises' quiet title claim, and in granting the Kerseys' quiet title claim?

[¶ 17] Quiet title actions are equitable in nature, although now statutorily based. *Norris v. United Mineral Products Co.,* 61 Wyo. 386, 404, 158 P.2d 679, 684 (1945); 65 Am.Jur.2d *Quieting Title* §§ 4, 6 (2001). Wyo. Stat. Ann. § 1–32–201 (Lexis-Nexis 2009) reads as follows:

> An action may be brought *by a person in possession* of real property against any person who claims an estate or interest therein adverse to him, for the purpose of determining the adverse estate or interest. The person bringing the action may hold possession himself or by his tenant.

(Emphasis added.) For purposes of the instant case, it is especially important to note that "[a] quiet title action requires proof of possession, while an ejectment action requires proof that the complainant is illegally being kept from possession." *Bragg v. Marion,* 663 P.2d 505, 506 (Wyo.1983); *see also* 65 Am.Jur.2d *Quieting Title* § 2 (2001). Unless the land is vacant, an action for ejectment is the proper course for a party not in possession:

> [T]he rule requiring actual possession by plaintiff is based on the availability of full protection to him through an action in ejectment or its statutory substitute. If the land is not occupied by any one, the plaintiff having title may sue to have his title quieted, either because the remedy exists independent of the statute, or because his title gives him constructive possession.

*Goodrich v. Stobbe,* 908 P.2d 416, 418 (Wyo. 1995) (quoting *Ohio Oil Co. v. Wyoming Agency,* 63 Wyo. 187, 208, 179 P.2d 773, 779 (1947)); *see also Amick v. Elwood,* 77 Wyo. 269, 277, 314 P.2d 944, 946–47 (1957), and *Huber v. Delong,* 54 Wyo. 240, 249–50, 91 P.2d 53, 56 (1939).

[¶ 18] In the instant case, the Kerseys proved that the Bellises were in sufficient possession of the disputed portion of the Kersey tract so as to necessitate their ejectment therefrom. The Kerseys also proved that their own possession of the disputed parcel was prevented by the Bellises, despite the Kerseys' record title. The proper relief was ejectment, not quiet title. Denial of the Bellises' quiet title claim was appropriate, but the grant of the Kerseys' similar claim was not and the district court is reversed in regard to the latter.

### Did the district court err in granting trespass damages to the Kerseys?

[¶ 19] In the real property context, trespasses are "invasions of the interest in the exclusive possession of land and in its physical condition." *Edgcomb v. Lower Valley Power & Light,* 922 P.2d 850, 859 (Wyo. 1996) (quoting Restatement (Second) of Torts Ch. 7 [§§ 157–166] at 275 (1965)); *see also*

*Skane v. Star Valley Ranch Ass'n,* 826 P.2d 266, 268–69 (Wyo.1992) (gist of action is injury to possession). The district court concluded in the order entered after the bench trial in the instant case that the Bellises had committed a trespass against the Kerseys. An unreported hearing on trespass damages took place some months later, with the district court eventually ordering the Bellises to pay to the Kerseys $1,300.00 as actual damages for the interruption in Kerseys' fence construction, and $1,500.00 as "nominal damages and to aid them in the cost of erecting a boundary fence."

 [¶ 20] Wyoming follows the general rule that "at least" nominal damages are available where an actionable trespass has occurred. *Harmony Ditch Co. v. Sweeney,* 31 Wyo. 1, 7, 222 P. 577, 579 (1924); *see also Brown v. Johnston,* 2004 WY 17, ¶ 36, 85 P.3d 422, 432 (Wyo.2004) (nominal damages awarded where cause of action for a legal wrong is established even though no proof of actual damages); and *State ex rel. Willis v. Larson,* 539 P.2d 352, 355 (Wyo.1975) (nominal damages awarded where cause of action for a legal wrong is established even though no proof of actual damages). For their proposition that both nominal damages and actual damages are recoverable, the Kerseys rely upon *Sagebrush Development, Inc. v. Moehrke,* 604 P.2d 198, 202–03 (Wyo.1979).

[¶ 21] We find the Kerseys' reliance upon *Sagebrush Development* to be misplaced. A close reading of that case suggests that it adheres to the general rule that "nominal damages are awarded when actual damages are not proven, are not susceptible to proof, or do not exist." *Id.* at 202. In *Sagebrush Development,* both nominal damages and actual damages were approved because of successive breaches of a divisible contract, which is not the circumstance currently before the Court. *Id.* at 203. *See* 75 Am.Jur.2d *Trespass* § 112 (2007) (nominal damages available in the absence of proven or actual damages); and 22 Am.Jur.2d *Damages* § 15 (2003) (nominal damages recoverable where no actual damage results or is proved).

[¶ 22] Beyond this discussion is the problematic fact that, in the final order entered after the damages hearing, the district court found $1,300.00 proven as actual damages, but then found the Kerseys to be entitled to $1,500.00 from the Bellises "as nominal damages and to aid them in the cost of erecting a boundary fence." Without the aid of a hearing transcript, and without a more detailed finding, this Court is unable to determine what portion of the latter award is meant to be nominal damages and what portion is meant to help reimburse the Kerseys for the construction of a boundary fence. Furthermore, although Wyo. Stat. Ann. § 11–28–106 (LexisNexis 2009) provides for a civil action in the event that a neighboring landowner refuses to pay one-half the cost of a partition fence, that cause of action was not raised in this case, and there is no evidence before the Court that the Bellises have refused to pay such amount, if demanded. We conclude that the award of $1,500.00 must be reversed. On the other hand, the award of $1,300.00 in actual damages is affirmed because there is evidence to support it.[5] *See, e.g., Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 891 (Wyo.2005).

### Did the district court err in granting costs to the Kerseys?

 [¶ 23] We review an award of costs to the prevailing party for an abuse of discretion. *Snyder v. Lovercheck,* 2001 WY 64, ¶ 6, 27 P.3d 695, 697 (Wyo.2001). The award should be reasonable under the circumstances, and the ruling should be neither arbitrary nor capricious. *Id.* Costs were not recoverable at common law, and are governed by statute and court rule, with courts having no inherent authority to grant costs. 20 Am.Jur.2d *Costs* §§ 1, 2 (2005). In Wyoming, "the court may award and tax costs and apportion them between the parties on the same or adverse sides as it deems right and equitable." Wyo. Stat. Ann. § 1–14–126(a) (LexisNexis 2009). Allowable costs are determined pursuant to U.R.D.C. 501.

[¶ 24] U.R.D.C. 501(a) mandates a particular procedure for seeking costs. First, the

---

5. On June 15, 2005, the day Mr. Bellis ordered the Kerseys off the land, the Kerseys had taken vehicles and equipment to the site, and had measured for and dug several post holes.

prevailing party must file an itemized certificate of costs within twenty days after entry of the "final judgment allowing costs[.]" U.R.D.C. 501(a)(1). If objections to the certificate of costs are not served within ten days of its service, the costs are taxed as set forth in the certificate. U.R.D.C. 501(a)(2). If objections are filed, the court is to consider the certificate and the objections, with or without a hearing, and then to tax costs. *Id.*

[¶ 25] This procedure was followed in the instant case, with one consequential exception. On February 18, 2009, the district court issued its Findings of Fact, Conclusions of Law and Order, as amended the following day, in which it ordered as follows:

> 5. The Kerseys, Rocky Mountain Timberlands and Howards are hereby awarded the repayment of costs of this action by the Defendants Mr. and Mrs. Bellis upon submission thereof.

The Kerseys filed their certificate of costs on March 18, 2009, and the Bellises filed their objection on March 25, 2009. The district court heard the matter on October 23, 2009, and on November 2, 2009, entered its Order Awarding Costs to Plaintiffs Ronny and Peggy Kersey. The Bellises appealed from the February 18, 2009 order, the October 23, 2009 order, and the November 2, 2009 order.

[¶ 26] The Bellises raised below, and here on appeal, numerous objections to the Kerseys' certificate of costs. We will discuss only one of those objections, which we find dispositive. U.R.D.C. 501(a)(1) requires a party seeking costs to file his or her itemized certificate of costs within twenty days after entry of the "final judgment allowing costs." In the instant case, that phrase can only refer to the amended February 18, 2009 order that allowed costs to the Kerseys. The Kerseys did not file their certificate of costs within the required twenty days, but filed it twenty-seven days after entry of the order. There is no indication in U.R.D.C. 501 that this time limit is discretionary. The district court should have granted the Bellises' objection to the certificate of costs on this basis. Therefore, we reverse that portion of the district court's final order awarding costs to the Kerseys.

[¶ 27] In the hope of providing further guidance in regard to the timely filing of a certificate of costs, we will comment briefly upon the Kerseys' argument that, while conceding that their certificate was filed more than twenty days after the "initial ruling," it was filed well before the hearing on trespass damages and well before the November 2, 2009 order, so it should be considered timely. We conclude to the contrary that the Findings of Fact, Conclusions of Law and Order entered on February 18, 2009, unquestionably was the "final judgment allowing costs" contemplated by U.R.D.C. 501. Because the Rule specifically contemplates the *subsequent* filing of objections, a *subsequent* hearing, and a *subsequent* ruling, the subsequent ruling cannot be considered the "final judgment allowing costs." That interpretation of U.R.D.C. would permit the filing of a certificate of costs after such costs were determined. We do not read statutes or court rules so as to produce an absurd result. *State v. Curtis,* 2002 WY 120, ¶ 10, 51 P.3d 867, 870 (Wyo.2002) (no absurd results); *MM v. State Dep't of Family Servs.,* 2009 WY 28, ¶ 11, 202 P.3d 409, 413 (Wyo.2009) (court rules and statutory construction).

## CONCLUSION

[¶ 28] The district court's findings of fact are not clearly erroneous as they relate to the denial of the Bellises' claim of adverse possession against the appellees, as they relate to the grant of the Kerseys' claims of trespass and ejectment against the Bellises, or as they relate to the actual trespass damages awarded to the Kerseys. Finding no error of law in any of those determinations, the district court is affirmed to that extent. The grant of the Kerseys' quiet title claim is reversed, however, because the Kerseys did not prove that they were in possession of the disputed portion of their tract. In fact, they proved the opposite. The award to the Kerseys of $1,500.00 as "nominal damages and to aid them in the cost of erecting a boundary fence" is reversed because there are no findings of fact in the record from which this Court can determine how much of the award is for nominal damages and how much is for fence construction, because the Kerseys have

not produced convincing precedent allowing the recovery of both actual and nominal damages, and because the Kerseys did not plead the statutory cause of action for the sharing of the expense of construction of a partition fence. The award of costs to the Kerseys is reversed because the certificate of costs was untimely.

[¶ 29] Remanded to the district court for entry of an order consistent herewith.