**John W. BENNETT and Patricia A. Bennett, Plaintiffs,**

**v.**

**Richard DUNN, U. S. Marshal, Roy Dawson and June G. Dawson, Defendants.**

**No. Civ. LV 80–136 RDF.**

United States District Court, D. Nevada.

Dec. 16, 1980.

Thomas E. Lea, Las Vegas, Nev., for plaintiffs.

B. Mahlon Brown, U. S. Atty., by Brian L. Sullivan, Asst. U. S. Atty., Las Vegas, Nev., for Marshal Dunn.

Eric L. Zubel, of Clark & Zubel, Las Vegas, Nev., for Dawson.

## ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTION TO DISMISS

ROGER D. FOLEY, District Judge.

Pursuant to Rule 65, Federal Rules of Civil Procedure, plaintiffs have moved for a preliminary injunction enjoining the execution sale until a trial can be had on the merits. Pursuant to Rule 12(b)(6), FRCP, defendants have moved for an order dismissing the complaint for failure to state a claim upon which relief can be granted.

### STATEMENT OF FACTS

On September 4, 1974, a default judgment was entered in the Central District of California in favor of John Riley Kennedy and against Newport Securities Corporation, a corporation; A. Gurdon Wolfson; Martin Susson; Roy O. Dawson; and Rex Richard Reno. John Riley Kennedy caused a writ of execution to be issued by the Clerk of the Central District of California upon said judgment and levied upon the California property of the defendant therein, Roy O. Dawson. To avoid an execution sale of his property, Roy O. Dawson paid Kennedy $20,000. Rather than have satisfaction of judgment entered, Roy O. Dawson attempted to keep the judgment alive by obtaining an assignment from Kennedy to his wife, June G. Dawson, who is not a defendant in the action in the Central District Court of California. This assignment was made on March 27, 1978, and contained a release by Kennedy of Roy O. Dawson.

On June 29, 1979, attorneys for June G. Dawson mailed a certified copy of the said judgment to the Clerk of the United States District Court for the District of Nevada asking that the same be filed therein. A copy of the judgment received by the Clerk of this Court contained a certification of the General Services Administration, National Archives and Records Center, and not the certification stamp of the United States District Court for the Central District of California, because the file had been transferred by the Clerk of the Central District of California to the General Services Administration Records Center. A copy of the GSA certificate is attached hereto as Exhibit A.

On July 6, 1979, the Clerk of this district filed the certified copy of the judgment in Miscellaneous Civil File No. 781. On July 17, 1979, the attorneys for June G. Dawson requested that a copy of the said judgment, on file with the Clerk of this Court, be sent to the First American Title Company of Las Vegas for recording. A copy of the judgment was certified by the Clerk of this Court on July 25, 1979, and was recorded on July 31, 1979, in the office of the County Recorder of Clark County, Nevada, in Book 1094, Instrument No. 1053213. The recorded instrument does not contain a certifica-

tion by the General Services Administration, National Archives and Record Center, nor a certification by the Clerk of the Central District of California. The recorded instrument contains only the certification stamp of the Clerk of this district, a copy of which is attached hereto as Exhibit B.

If the recording was made according to law, and if the judgment was still valid, the judgment would constitute a judgment lien upon the Nevada real property of A. Gurdon Wolfson, defendant in the action in the Central District.

On October 22, 1979, plaintiffs John and Patricia Bennett purchased a condominium from A. Gurdon Wolfson located at 3111 Bel Aire Drive, Unit 4–D, Las Vegas, Nevada.

For some unapparent reason, counsel for June G. Dawson submitted to the Clerk of this Court another identical copy of the judgment entered in the Central District, again certified by the General Services Administration, the certification being identical with Exhibit A hereto, and on January 15, 1980, the Clerk of this Court did again file the Central District judgment, as certified by GSA, in the records of this Court, this time as Miscellaneous Civil No. 873. Again, there was no certification by the Clerk of the Central District of California, only the certification of the GSA.

Proceeding further in Miscellaneous Civil No. 873, and not in Miscellaneous Civil No. 781, counsel for June G. Dawson caused the Clerk of this Court to issue a writ of execution on the judgment entered in this Court on July 6, 1979 (Miscellaneous Civil No. 781). The writ of execution was issued by the Clerk of this Court on February 26, 1980, and apparently levied upon the condominium on Bel Aire Drive that, as stated aforesaid, had been sold by A. Gurdon Wolfson on October 22, 1979, to the plaintiffs.

The United States Marshal gave notice of execution sale by publication, scheduling a sale at public auction for May 12, 1980, at 10:00 A.M. (The notice of sale and the writ of execution were filed in Miscellaneous Civil File No. 873 on September 5, 1980.)

On May 7, 1980, the Bennetts filed their complaint in this action against the Marshal, Roy O. Dawson and June G. Dawson and on the same date applied for a temporary restraining order and for a motion for preliminary injunction. On May 8, 1980, this Court entered a temporary restraining order enjoining the execution sale of the property at 3111 Bel Aire Drive, Unit 4–D, Las Vegas, Nevada. On May 13, 1980, the temporary restraining order was extended to June 23, 1980, by stipulation of counsel; on June 5, 1980, to September 8, 1980; and on September 5, 1980, further extended to November 3, 1980, all by stipulation of counsel. This Court heard plaintiffs' motion for preliminary injunction on November 3, 1980, and took the same under submission, obtaining the further stipulation of counsel that the temporary restraining order remain in full force and effect until the Court decided the motion for preliminary injunction and a motion to dismiss on behalf of the defendants Roy O. Dawson and June G. Dawson that was also heard on November 3, 1980.

### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO DISMISS

Plaintiffs' first contention is that the defendants failed to properly file and record the judgment from the United States District Court for the Central District of California. Plaintiffs also argue that since the judgment which was executed upon was filed in January of 1980, there could be no valid lien in effect at the time the plaintiffs acquired the property in October of 1979. Plaintiffs further argue that even if the judgment was properly filed in July of 1979, the recording in the county records was insufficient to create a valid lien under Nevada law because it was not certified by the United States District Court for the Central District of California.

The federal scheme for enforcement of judgments and the creation of liens on real property with judgments is contained in *Title 28 U.S.C. §§ 1962* and *1963.* *Title 28 U.S.C. § 1962* provides as follows:

"Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State."

*Title 28 U.S.C. § 1963* provides as follows:

"A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district court by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

"A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien."

■ Plaintiff contends that the judgment was never properly registered with this Court because it only contained a certification of the General Services Administration, National Archives and Records Center, and not the certification stamp of the United States District Court for the Central District of California. The Court finds that a judgment is properly filed in this Court if it contains either the certification of GSA or the certification of the district court where it was entered. *Title 28 U.S.C. § 1963* only requires the filing of a "certified copy of such judgment." It does not specify what certification is required. Therefore, the Central District of California judgment was properly filed in this Court on both occasions, when the judgment was filed on July 6, 1979, and when the same judgment was again filed on January 15, 1980.

Plaintiff further argues that because the judgment which was executed upon was not filed until January 15, 1980, there could be no valid lien in effect when the plaintiffs acquired the property on October 22, 1979. It is unclear why the defendants filed another copy of the judgment with this Court on January 15, 1980 (Miscellaneous Civil File No. 873). Although filed in Case No. 873, the writ of execution was issued upon the judgment filed on July 6, 1979, in Case No. 781. Therefore, if the recording was made according to Nevada law, and if the judgment was still valid, the judgment would constitute a judgment lien upon the property of A. Gurdon Wolfson when the plaintiffs bought the property in October of 1979.

■ Plaintiffs then contend that even if the judgment was properly filed with this Court, it was not recorded in the Clark County Records in a proper manner to create a lien under Nevada law. The appropriate procedure for creating a lien against real estate from a judgment is contained in *NRS § 17.150* which provides in part:

"2. A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or *the District Court or other court of the United States in and for the District of Nevada,* the enforcement of which has not been stayed on appeal, *certified by the clerk of the court where the judgment or decree was rendered,* may be recorded in the office of the coun-

ty recorder in any county, and when so recorded it shall become a lien upon all the real property of the judgment debtor not exempt from execution in such county . . .

" . . .

" . . .

"3. The abstract described in subsection 2 shall contain:

"(a) Title of the court and cause, and the number of the action;

"(b) Date of entry of the judgment or decree;

"(c) Names of the judgment debtor and judgment creditor;

"(d) Amount of the judgment or decree; and

"(e) Where entered in the minutes or judgment docket."

(Emphasis added)

The defendants recorded a copy of the judgment which contained the certification stamp of the United States District Court for Nevada. It did not contain either the certification stamp of the General Services Administration or the United States District Court for the Central District of California. Plaintiffs argue that the latter two are needed to create a lien under the statute because of the words "certified by the clerk of the court where the judgment or decree was rendered." *NRS § 17.150(2).* However, it is the opinion of this Court that these words modify or describe what is required of the Nevada courts and the Federal courts for Nevada mentioned in the statute. The statute is completely silent as to out-of-state or foreign courts. The requirements for the "abstract" specified in *NRS § 17.150(3)* of the statute further support this interpretation. It refers only to one court and that would seem to indicate that a certificate would be required only of a Nevada court and not any foreign court certification. Furthermore, the recorded judgment in this case contains all the elements listed in *NRS § 17.150(3).* This Court holds that the recording substantially

complies with the requirements of the statute and constitutes a valid lien if the judgment has not already been satisfied. Therefore, plaintiffs' motion for a preliminary injunction cannot be granted on this basis.

Plaintiffs' second major contention is that the judgment has been satisfied under California law by the assignment of the judgment to June G. Dawson by John Riley Kennedy which contained a release of Roy O. Dawson. Plaintiffs argue that the assignment of the judgment to the wife of Mr. Dawson in return for $20,000 and the release of Mr. Dawson satisfied the judgment. They argue that June G. Dawson is nothing more than a "strawman" for Roy O. Dawson and that the assignment of the judgment in this manner is against California law which does not allow contribution between joint tortfeasors for intentional torts. *Cal.Code Civ.Proc.* § 875(d). Defendants argue that June G. Dawson was not a judgment debtor in the first action and that the judgment remains alive to be enforced against other tortfeasors.

■ California law would apply to the validity of the assignment since the judgment was rendered and later assigned in California. See *Gray v. Travelers Indem. Co.,* 280 F.2d 549 (9th Cir. 1960). In general, California recognizes that a judgment is property that may be transferred the same as any other species of property. *Pacific Gas & Electric Co. v. Nakano,* 12 Cal.2d 711, 87 P.2d 700 (1939). Therefore, if Mr. Kennedy had assigned the judgment to an uninterested third party, the judgment would still be alive under California law.

■ In this case, however, the assignment of the judgment was to a wife of one of the defendants in the original suit. Furthermore, the assignment contained a release clause for the defendant husband as to any liability arising from the intentional tort of securities fraud. These facts make other provisions of California law applicable and probably controlling.

In 1957, California passed its present statute in regard to the right of contribution. *Cal.Code Civ.Proc.* § 875(d) states: "[t]here shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person." In interpreting this language, California courts have held that this provision is unequivocal, leaves no room for equitable and other considerations, and its clear purpose is not to be defeated by an assignment of the judgment. *Bartneck v. Dunkin*, 1 Cal.App.3d 58, 81 Cal.Rptr. 428 (1969); 14 Cal.Jur.3d, *Contribution and Indemnification* § 76. As such, California courts apply the common law rule that no contribution exists in the area of intentional torts. As set forth in *Adams v. White Bus Line*, 184 Cal. 710, 195 P. 389 (1921), the Court stated the common law rule as follows:

"The rule applicable to this case is stated in *Harbeck v. Vanderbilt*, 20 N.Y. 395:

'Where one of several defendants against whom there is a joint judgment pays to the other party the entire sum due, the judgment becomes * * * extinguished, whatever may be the intention of the parties to the transaction. It is not in their power, by any arrangement between them, to keep the judgment on foot for the benefit of the party making the payment. If, therefore, in such a case the latter take an assignment to himself, or, unless under special circumstances, even to a third person for his own benefit, the assignment is void and the judgment satisfied.'

"Where one of several joint wrongdoers pays a judgment obtained against them all, he acquires no right of contribution by taking an assignment of the judgment in the name of a man of straw."

195 P. 389 at 389–390.

In this case, it is probable that the plaintiff will be able to prove that the assignment containing the release of Roy Dawson was made to a "man of straw," June Dawson. This would contravene the strong policy of the California courts and legislature against allowing contribution among intentional tortfeasors. Therefore, defendants' motion to dismiss should be denied.

As to the plaintiffs' motion for a preliminary injunction, there are three elements that the plaintiffs must show in order for this Court to grant the preliminary injunction. They are as follows:

1. Show that it is likely that plaintiff will succeed on the merits;

2. Make a showing of irreparable harm if the injunction is not granted; and

3. Show that the plaintiff is in need of protection and that the damage to him in the absence of an injunction outweighs the foreseeable harm to the defendant. 7 *Moore's Federal Practice* § 65.04[1] at 39–41 (2d ed. 1979).

The plaintiffs in this case meet the standards set forth above. It is likely that the plaintiffs will be able to show that the judgment has been satisfied under California law. If the preliminary injunction is not granted, then the property will be executed upon and there is a possibility that the plaintiffs will lose it or have to pay a lot more to hold on to it. Property is always unique under the general principles of the law of equity and its possible loss or destruction usually constitutes irreparable harm. The balance of hardship also favors the plaintiffs in this case. They are faced with the possible loss of their property if the preliminary injunction is not granted. The defendants will suffer no loss because, if their judgment is determined to be valid, then they will still have property upon which to execute the judgment. Given the hardships, the probability of success on the merits, the preliminary injunction is hereby granted and the defendants' motion to dismiss is hereby denied.

EXHIBIT A

GENERAL SERVICES
ADMINISTRATION

National Archives and Records Service

to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Administrator of General Services, I certify on his behalf, under the seal of the United States General Services Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.

[SEAL] | SIGNATURE *James W. Mouat* | DATE JUN 2 9 1979
JAMES W. MOUAT
TITLE Director
NAME AND ADDRESS OF DEPOSITORY
Federal Archives & Records Center NARS
General Services Administration
24000 Avila Road
Laguna Niguel, California 92677

GSA. FORM 6791E

EXHIBIT B

I hereby attest and certify on 7/25/79 that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CAROL C. FITZGERALD
CLERK, U. S. DISTRICT COURT
DISTRICT OF NEVADA

By *Marlene Gieicke* Deputy