IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

December 18, 2023 03:10 PM
SCT-Civ-2021-0044
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

|  |  |  |
|---|---|---|
| **JOHN KLEIN,** | ) | **S. Ct. Civ. No. 2021-0044** |
| Appellant/Defendant | ) | Re: Super. Ct. Civ. No. 148/2021 (STT) |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **MADELINE BASSIL,** | ) |  |
| Appellee/Plaintiff. | ) |  |
|  | ) |  |
|  | ) |  |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas-St. John
Superior Court Judge: Hon. Sigrid M. Tejo

Argued: November 9, 2022
Filed: December 18, 2023

Cite as: 2023 VI 14

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice, and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Jason E. Ohana, Esq.** (Argued)
**Patrick D. Blake, Esq.**
Willcox & Savage, P.C.
Norfolk, Virginia
*Attorneys for Appellant,*

**Matthew J. Duensing, Esq.** (Argued)
**Joseph D. Sauerwein, Esq.**
Law Offices of Duensing & Casner
St. Thomas, U.S.V.I.
*Attorneys for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1      Appellant John Klein appeals from the Superior Court's August 16, 2021 opinion and

order, which granted Madeline Bassil's motion for a preliminary injunction, enjoining Klein and others at his direction from trespassing on any portion of her parcel of property. For the reasons that follow, we affirm.

## I.     BACKGROUND

¶ 2     In 2002, Bassil and her former spouse, Terry Anderson, purchased Parcel No. 2D-12 Estate Nazareth, St. Thomas, U.S. Virgin Islands. After the couple's divorce in 2006, Bassil became the sole owner of the parcel. In 2004, Klein purchased Parcel No. 2D-11, located directly to the south of Bassil's parcel. When he was constructing a building on his Parcel No. 2D-11, Klein encroached on Parcel No. 2D-12. In 2008, to cure the encroachment he purchased a piece of Parcel No. 2D-12 from Bassil and her parcel was thereafter renumbered as Parcel No. 2D-12 Remainder.[1] Before selling the encroached portion of her property to Klein, Bassil requested that he have a land survey done to determine the exact boundaries of the parties' respective properties. In 2014 and 2015, Klein made offers to purchase Parcel No. 2D-12 Remainder, but the offers were rejected by Bassil.

¶ 3     Bassil first became aware of paths crossing over her parcel in January 2021, when she was informed by her real estate agent that "bush, vegetation, trails and steps had been cut through and across her Parcel from Parcel No. 2D-11 and over Parcel No. 2D-13 Estate Nazareth to reach the

---

[1] In 2008, there was a dispute over Klein's driveway encroaching on Bassil's parcel: Klein claimed that as he was excavating for the construction of his house dirt fell onto Bassil's property; Bassil claimed that Klein extended his driveway onto her property. Bassil asked Klein to have a land survey done on Parcel No. 2D-12, which found that Klein's driveway did in fact extend onto Bassil's parcel. In email correspondence between Bassil and Klein, the parties discussed Klein purchasing the disputed sliver of land from Bassil. During this exchange, Klein asserted that he owned the sliver of land by adverse possession. This claim was never litigated and Bassil agreed to sell the piece of land, consisting of 1,030 square feet, to Klein for $20,000, which was consummated by quitclaim deed on November 20, 2008.

Secret Harbor beach."  Bassil commissioned a land survey of her parcel, which confirmed the existence of trails traversing her parcel "apparently opened and utilized by the owner and occupants of Parcel No. 2D-11."[2]  Around this same time, Bassil became aware that Klein had begun renting out rooms in his residence on Parcel No. 2D-11 and that his rental advertisements highlighted "a private path to a gorgeous white sand beach."  On February 15, 2021, Bassil served Klein with a cease-and-desist letter requesting that he cease and desist all activity on Parcel No. 2D-12 Remainder, advising Klein that he did not have her permission or consent to do anything on the parcel.[3]  Klein, in response, asserted that he had acquired rights to a portion of Parcel No. 2D-12 Remainder through adverse possession and/or a prescriptive easement.

¶ 4     Bassil filed the complaint initiating this action on April 20, 2021,[4] in which she sought a temporary restraining order, injunctive relief, trespass, declaratory judgment, quiet title, and damages for slander of title and intentional infliction of emotional distress.  On April 26, 2021, Bassil filed an emergency motion for a temporary restraining order and a preliminary injunction. The Superior Court denied Bassil's motion for a temporary restraining order and instead scheduled and conducted an evidentiary hearing on her motion for preliminary injunction on July 27 and 28,

---

[2] At the preliminary injunction hearing, Ryan Wisehart, the owner of the land survey company that performed the survey, testified that this information came from "the collection of data on the property and the process of preparing the survey, as well as the observations or hand-in-hand with the observations of the survey crew chief who did the fieldwork."

[3] In Bassil's complaint, she asserted that Klein's counsel responded that Klein had acquired rights to a portion of Parcel No. 2D-12 Remainder through adverse possession and/or a prescriptive easement.  The response letter from Klein's counsel was not submitted to the Superior Court; however, in Klein's answer, he alleged that he had acquired rights to a portion of Parcel No. 2D-12 through adverse possession and/or a prescriptive easement.

[4] The Superior Court's August 16, 2021 order incorrectly noted that Bassil filed the initiating complaint on April 20, 2020.  We have noted the correct date as April 20, 2021.

2021.  The Superior Court decided to not consolidate the preliminary injunction hearing with a trial on the merits as permitted at the Superior Court's discretion by Rule 65 of the Virgin Islands Rules of Civil Procedure.  *See* V.I. R. CIV. P. 65(a)(2).

¶ 5    At the preliminary injunction hearing, Bassil testified that there were no paths or trails over Parcel No. 2D-12 when she and Anderson inspected it before purchasing the parcel in 2002.  She testified further that she had visited her parcel in St. Thomas several times over the years, specifically mentioning 2012 and 2015, and stating that she had never observed any paths or trails on or across the property.  Anderson testified that from 2002 to 2009 he never observed any established trails, and that the last time he visited the parcel in 2009, he had to "pick" his way down through the bushes, "the same way [he] always did," to access the beach.  The Superior Court also heard testimony from three local realtors, all of whom testified to never having observed any established trails over Bassil's parcel looking from the vantage points of the beach, the water, and the neighboring parcel to the north, until they were first discovered in late 2020 or early 2021. Ryan Wisehart, the owner of the land survey company that conducted surveys of Parcel No. 2D-12 in 2008 and 2021, testified that there was no reference to any trail on the parcel in the 2008 survey, but that there was a "meandering path" found by the 2021 survey.  Bassil also submitted aerial photographs from 2015, Google Earth images[5] from 2019, and drone photographs from 2021, which did not show any trails on Parcel No. 2D-12 Remainder in 2015 but clearly showed trails across the property in 2019 and 2021.

---

[5] Google Earth is an online mapping service which allows users to call up detailed satellite images of most locations on Earth, accessing satellite and aerial imagery as well as other geographic data to represent the Earth as a three-dimensional globe.  *Google Earth*, ENCYCLOPAEDIA BRITANNICA, https://www.britannica.com/topic/Google-Earth (last visited Apr. 11, 2023).

¶ 6     Klein claimed that he has acquired rights to the use of the trails located on Parcel No. 2D-12 Remainder through adverse possession and/or prescriptive easement.  Klein alleged that in 2004 when he purchased Parcel No. 2D-11, a single trail started at his parcel and traversed through Bassil's parcel to Secret Harbor Beach.  Klein further alleged that in 2005,[6] he constructed an additional trail that started at a different part of his parcel, which met up with and joined the original trail, and ended at the beach.  Klein testified to using the original trail over Parcel No. 2D-12 as early as 2002, and then subsequently using the trails all the time after purchasing his parcel of property.  Klein elicited witness testimony at the preliminary injunction hearing from six close friends, who testified that they had visited Klein and accompanied him on a "secret" path across Parcel No. 2D-12 on multiple occasions over the years, beginning in 2003 with the last visit in 2019.  Klein testified that since 2004, he has maintained and improved the paths, cleared brush, kept the ground clear of debris, removed termite nests, and installed a "no trespassing" sign.  Klein also testified that he encouraged his rental guests to use the trails.  Klein claimed that the granting of a preliminary injunction would harm his rental business, his reputation, and his health because he would not be able to access the beach safely in order to swim for his saltwater lung therapy, due to the poor condition of the road to the public beach access.

¶ 7     On August 16, 2021, the Superior Court issued its opinion and order granting Bassil's motion for a preliminary injunction.  The Superior Court found that Bassil had demonstrated a reasonable likelihood of success on the merits of her trespass claim, that she was suffering and would continue to suffer irreparable harm absent injunctive relief, that Klein would not suffer irreparable harm, and that the public interest weighed in favor of granting the preliminary

---

[6] Bassil claimed that Klein did not complete the construction of his home until 2008.

injunction.  Klein timely filed his notice of appeal on September 16, 2021.  *See* 4 V.I.C. § 33(d)(5).

## II.    DISCUSSION

### A.  Jurisdiction and Standard of Review

¶ 8     The Supreme Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions," 4 V.I.C. § 33(b)(1), and we may review the Superior Court's decision to grant the preliminary injunction "even though the underlying action remains pending before the Superior Court."  *Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 589 (V.I. 2015).  Because Klein filed his notice of appeal of the Superior Court's August 16, 2021 order granting the preliminary injunction within thirty days, this Court has jurisdiction over this appeal.  4 V.I.C. § 33(d)(5).

¶ 9     This Court reviews the Superior Court's overall decision to grant or deny an injunction for abuse of discretion.  *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012).  The Superior Court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *Stevens v. People*, 55 V.I. 550, 552 (V.I. 2011) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)).  We review the Superior Court's factual determinations regarding the "likelihood of irreparable harm, harm to the nonmoving party, and whether the injunction is in the public interest" only for clear error.  *Yusuf v. Hamed*, 59 V.I. 841, 848 (V.I. 2013).  The clear error standard is highly deferential to the Superior Court's findings; thus this Court will "only reverse a factual determination as being clearly erroneous if it is completely devoid of minimum evidentiary support or bears no rational relationship to the supportive evidentiary data."  *In re Estate of Small*, 57 V.I. 416, 428 (V.I. 2012).  As long as "a rational person could agree with the assessment of the [Superior Court]," we will not overturn its factual conclusions.  *Moore v. Walters*, 61 V.I. 502, 508 (V.I. 2014).

## B. Preliminary Injunction

¶ 10    A preliminary injunction is "an extraordinary and drastic remedy," never awarded as of

right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Yusuf*, 59 V.I. at

847 (internal citations omitted).  It is well established in the Virgin Islands that when determining

whether to grant a preliminary injunction, the Superior Court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits;
> (2) whether the movant will be irreparably injured by denial of the relief; (3)
> whether granting preliminary relief will result in even greater harm to the
> nonmoving party; and (4) whether granting the preliminary relief will be in the
> public interest.

*Petrus*, 56 V.I. at 544.  The moving party bears the burden of making a showing on all four factors.

*Appleyard v. Governor Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 591 (V.I. 2014).  This Court

has adopted a modified sliding-scale test, which requires the Superior Court to "make findings on

each of the four factors and determine whether – when the factors are considered together and

weighed against one another – the moving party has made 'a clear showing that [it] is entitled to

[injunctive] relief.'" *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 557 (V.I. 2015) (quoting

*Yusuf*, 59 V.I. at 847).  To obtain a preliminary injunction, the moving party must demonstrate

primarily that irreparable harm is likely without an injunction.  *Id.* at 554 (collecting cases).

Without some showing of irreparable harm, injunctive relief is inappropriate.  *Id.* at 561.  However,

risk of irreparable harm alone is not enough; the moving party must also make "at least *some*

showing that [it] is likely to succeed on the merits." *Id.* at 554-55 (citing *Marco St. Croix, Inc.*, 62

V.I. at 590 n.2 (emphasis in original) (finding that the movant's possibility of success was

essentially zero, and thus no showing of potential irreparable harm would justify a preliminary

injunction)).  Accordingly, where there is a strong showing of success on the merits, injunctive

relief may still be appropriate even where the moving party's showing of irreparable harm is

weaker, so long as the moving party has made some showing on all four injunction factors. *3RC & Co.*, 63 V.I. at 556-57. With this standard in mind, we review the Superior Court's findings on each factor in deciding to grant Bassil injunctive relief.

### 1.   Reasonable probability of success on the merits

¶ 11    To demonstrate a reasonable probability of success on the merits, the moving party must show that it has "a reasonable chance, or probability, of winning." *Yusuf*, 59 V.I. at 849. The party moving for a preliminary injunction does not have to show that it will "actually prevail on the merits at trial." *Id.* (noting that the moving party was not even required to show that his success was more likely than not). In order to satisfy her burden as the moving party, Bassil was required to "introduce evidence supporting each element" of the underlying trespass cause of action. *Id.* (citing *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980)).

¶ 12    The Superior Court concluded that Bassil established a reasonable probability of success on her trespass claim. In doing so, the Superior Court acknowledged that a split of authority exists amongst the judges of the Superior Court with respect to the elements of a civil trespass cause of action. In one case, the court performed a *Banks* analysis, *see Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 984 (V.I. 2011), and concluded that:

> A defendant will be liable to a plaintiff for trespass if the defendant: (1) intentionally enters onto the plaintiff's property without the plaintiff's permission; (2) remains on plaintiff's property without plaintiffs permission; (3) places something on the plaintiff's property without the plaintiff's permission; or (4) removes something from the plaintiff's property without the plaintiff's permission.

*Anduze v. Leader*, 63 V.I. 347, 353-54 (V.I. Super. Ct. 2015). However, in another case assigned to a different judge, the court reached a different conclusion after performing its own *Banks* analysis and elected to adopt the elements of intentional trespass as set forth in section 158 of the

Restatement (Second) of Torts:

> One is subject to liability for another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in possession of the other, or causes a thing or third person to do so or, (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.

*Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 410 (V.I. Super. Ct. 2015).

¶ 13    Although the Superior Court acknowledged the existence of this split,[7] in this case it neither adopted the *Banks* analysis performed by either of these courts, nor conducted its own *Banks* analysis.    Instead, the Superior Court analyzed Bassil's reasonable probability of success exclusively on the strength of her evidence and the weakness of Klein's adverse possession defense:

> In this case, Bassil has demonstrated a reasonable probability of success on her claim of trespass. Bassil alleges that Klein has intentionally trespassed on her property by entering her property without her permission and by cutting down and injuring trees, brush, and shrubbery. By cutting the brush to create a trail, Bassil asserts trespass that entitles her to treble damages pursuant to § 336 of title 28 of the Virgin Islands Code. Evidence presented by both parties supports Bassil's claim of trespass. Bassil testified that she has never allowed Klein to enter her property or cut trails through her brush. Email correspondence between Bassil and Klein from 2008 show that she did not permit him to enter her property or place anything on her property at that time. She provided photographs and surveys from 2021 showing the paths Klein created without her permission. By his own admission, Klein has never sought permission from Bassil to enter her property or cut brush on her property to create a trail. Klein also testified to allowing and encouraging others to use the trails on Bassil's property, including his personal friends and his AirBnB guests. Klein maintains that he has not trespassed on Bassil's property because the property is his by adverse possession. However, as in *Yusuf v. Hamed*, Klein's claim merely creates a "competing inference" that can only be determined by a jury at a trial on the merits which has yet to be done. The Court does not find Klein's adverse possession claim to be so strong that Bassil has no chance of succeeding on the merits of her trespass claim. Bassil has provided evidence that she could reasonably succeed on a trespass claim, and she therefore has satisfied this preliminary

---

[7] In a third case, *Bell v. Radcliffe*, the Superior Court performed a *Banks* analysis and adopted a broader interpretation of intentional trespass as the best rule for the Virgin Islands.  Super. Ct. Civ. No. 392/2013 (STT), 2015 WL 5773561, at *7 (V.I. Super. Ct. Apr. 30, 2015).

injunction factor.

*Bassil v. Klein*, 75 V.I. 19, 34 (V.I. Super. Ct. 2021). It is axiomatic, however, that a court cannot

meaningfully assess a litigant's likelihood of success on the merits without first determining what

elements the litigant needs to satisfy to prevail on that cause of action. Therefore, having

recognized that Virgin Islands courts had not spoken with one voice with respect to the elements

of a trespass action, the Superior Court possessed an obligation to determine those elements, even

if only for purposes of adjudicating the preliminary injunction motion.[8] Nevertheless, while the

failure to conduct a *Banks* analysis or adopt an earlier opinion's *Banks* analysis by reference would

ordinarily constitute reversible error, *see Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014),

in the interest of judicial economy we exercise our discretion to overlook the Superior Court's

error and ascertain for ourselves the elements of a trespass cause of action. *Accord, Browne v.*

*Gore,* 57 V.I. 445, 453 n.5 (V.I. 2012) (the Supreme Court "could, in the interests of judicial

economy, exercise [its] discretion to address [an] issue as part of [an] appeal, as [has been] done

in other cases in which [the] Court applies the same legal standard as a Superior Court judge")

(collecting cases).

¶ 14     To ascertain the elements of trespass, we must—as with every other common law rule—

consider and weigh the three *Banks* factors: "(1) whether any Virgin Islands courts have previously

---

[8] We acknowledge that performing a *Banks* analysis—or considering any issue of first impression for that matter—in the context of a preliminary injunction motion is often not ideal, given that the court is being asked to make this determination often without the benefit of full briefing from the parties. However, it is precisely for this reason that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits" and "do not constitute law of the case," *Yusuf v. Hamed*, 59 V.I. at 853 (collecting cases), and for that reason "should not be cited as binding authority in the parties' merits briefs." *Tip Top Constr. Corp. v. Gov't of the V.I.*, S. Ct. Civ. No. 2014-0006, 2014 WL 571905, at *4 n.7 (V.I. Feb. 14, 2014) (unpublished).

adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions and

(3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon*

*v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I.

2012)).  As we recently explained,

> [w]hile none of these three factors is individually dispositive, each plays an important role in the analysis. The first factor—whether other Virgin Islands courts previously adopted a particular rule—in effect requires a court to consider *stare decisis*; that is, whether the legal community and the public have reason to rely on a particular common law rule despite it not having yet been adopted by this Court. The second factor—the positions taken by other jurisdictions—informs the court of the existence of the majority and minority rules as well as the reasoning other jurisdictions relied upon to support them, thus ensuring that the court is not only aware of the potential possibilities but that it also may benefit from any national debate and how those rules may have operated in practice elsewhere. And the third and most important factor—determining the soundest rule for the Virgin Islands—requires a court to consider the practical implications of adopting a particular rule in the Virgin Islands as well as what rule is best in accord with the public policy of the Virgin Islands, including its consistency with related statutes, court rules, and judicial precedents. Notably, the ultimate goal of a *Banks* analysis is to ensure the creation of indigenous Virgin Islands law free of undue outside influence—as intended by Congress and the Virgin Islands Legislature in creating a local judiciary independent of the federal judiciary.

*Robertson v. Banco Popular de P.R.*, 2023 VI 3 ¶ 28 (internal citations omitted).  In other words,

a *Banks* analysis "involves more than simply the rote counting of judicial decisions," *id.* at ¶ 29,

but rather comprehends a "holistic" consideration of the aim served by each factor.[9]

¶ 15   With respect to the first factor—the adoption of a particular rule by other Virgin Islands

courts—we seek "to determine the extent, if any, that the legal community and the public have

grown to rely upon and potentially shape their conduct by a given rule." *Robertson*, 2023 VI at ¶

30 (citing *Banks*, 55 V.I. at 985 & n.10).  Thus, it is the character of the decisions—"such as the

---

[9] *See* Kristen David Adams, *The Move Toward An Indigenous Virgin Islands Jurisprudence: Banks in its Second Decade*, 91 FORDHAM L. REV. 1601, 1608-09 (2023).

age of the decisions, whether these judicial decisions are binding or non-binding precedent, and the general reasoning that underlies those decisions"—that is of particular importance, since the legal community and the public will necessarily grow to rely more on a single long-standing, well-reasoned precedential opinion issued by an appellate court of last resort than a large number of recent non-binding trial court decisions that adopt a rule "mechanistically or uncritically." *Id.*

¶ 16    The issue of what elements a plaintiff asserting an intentional trespass cause of action must prove is not one of first impression for this Court. In one of our earliest decisions, the Court adopted the rule set forth in section 158 of the Restatement (Second) of Torts:

> A plaintiff claiming trespass has the burden of proving that the defendant intentionally (a) entered land in the possession of the other, or caused a thing or a third person to do so, or (b) remained on the land, or (c) failed to remove from the land a thing which he was under a duty to remove.

*Hodge v. McGowan*, 50 V.I. 296, 306 (V.I. 2008) (internal quotation marks omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 158 (1965)). Of course, our *Hodge* decision pre-dates our subsequent *Banks* precedent and relied exclusively on the former 1 V.I.C. § 4 as the basis for invoking the Restatement rule in determining the intentional trespass claim. But while we have held that "the Superior Court need not consider itself foreclosed from adopting a different common law rule" when the only binding precedent applicable to it pre-dated *Banks*, *Connor*, 60 V.I. at 605 n.1, this is not tantamount to dispensing with the long-standing rule "that the Superior Court may not overrule [the] Supreme Court." *Gerace v. Bentley*, 65 V.I. 289, 304 (V.I. 2016) (quoting *Ebersole v. Southeastern Pa. Transp. Auth.*, 111 A.3d 286, 290 n.2 (Pa. Commw. Ct. 2015)). Importantly, we have emphasized that the Superior Court may only adopt a different common law rule if it has done so through a "thoroughly explain[ed]" *Banks* analysis in which our pre-*Banks* decision is given appropriate weight as part of its "consider[ation] with respect to the first *Banks*

factor." *Connor*, 60 V.I. at 605 n.1. Since the purpose of the first factor is to account for reliance interests and to consider stare decisis, the fact that this Court—the highest court of the Virgin Islands, vested with exercise of the supreme judicial power of the territory, *see* 4 V.I.C. § 21—has adopted the Restatement rule, even if in a pre-*Banks* decision, provides extraordinary support for accepting the Restatement or majority rule, for the legal community and the public can rely on no greater authority than a decision of this Court for a determination of the common law of the Virgin Islands. Thus, in this circumstance the first factor must necessarily strongly favor the Restatement or majority rule, since a series of non-binding Superior Court decisions—regardless of how many in number—can never establish a greater reliance interest among the legal community and the public than a precedential decision of this Court.

¶ 17    As to the second factor—the approaches taken by other United States jurisdictions—most jurisdictions to consider the question have also elected to follow the Restatement approach, either by adopting the language of section 158 largely verbatim or choosing slightly different language that is nevertheless consistent with the Restatement.[10] Of great significance, however, is that the

---

[10] *See, e.g., Callaway v. Whittenton*, 892 So. 2d 852, 857-58 (Ala. 2003); *Taft v. Ball, Ball & Brosamer, Inc.*, 818 P.2d 158, 161 (Ariz. Ct. App. 1991); *Guerrero v. DLB Constr. Co.*, 1999 Guam 9, at *16; *Spittler v. Charbonneau*, 449 P.3d 1202, 1208 (Haw. Ct. App. 2019); *Medeika v. Watts*, 957 A.2d 980, 982 (Me. 2008); *Martin v. Artis*, 290 P.3d 687, 691 (Mont. 2012); *Holcomb v. Rodriguez*, 387 P.3d 286, 291 (N.M. Ct. App. 2016); *Bradley v. Am. Smelting & Ref. Co.*, 709 P.2d 782, 785 (Wash. 1985); *Grygiel v. Monches Fish & Game Club, Inc.*, 787 N.W.2d 6, 18 (Wis. 2010); *St. Paul Church, Inc. v. Bd. of Trs. of Alaska Missionary Conference of United Methodist Church, Inc.*, 145 P.3d 541, 558 (Alaska 2006); *Pub. Serv. Co. v. Ban Wyk*, 27 P.3d 377, 389 (Colo. 2001); *City of Bristol v. Tilcon Minerals, Inc.*, 931 A.2d 237, 258 (Conn. 2007); *Robert's River Rides v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994); *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 94-95 (La. Ct. App. 2001); *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 224 (Mich. Ct. App. 1999); *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 701 (Minn. 2012); *Lambert v. Holmberg*, 712 N.W.2d 268, 274 (Neb. 2006); *Case v. St. Mary's Bank*, 63 A.3d 1209, 1216 (N.H. 2013); *Ross v. Lowitz*, 120 A.3d 178, 188 (N.J. 2015); *G&D Enters. v. Liebelt*, 949 N.W.2d 853, 858-59 (N.D. 2020); *Merino v.*

minority of jurisdictions which have adopted a different rule have not abandoned the Restatement

approach entirely, but rather have largely adopted the same test with changes to specific elements,

such as eliminating the requirement that the trespass be intentional[11] or presuming damages instead

of requiring the plaintiff to prove that he or she suffered harm.[12]  Consequently, the second factor

favors retaining the Restatement approach we previously adopted in *Hodge*.

¶ 18    Finally, the third and most important factor—what represents the soundest rule for the

Virgin Islands—likewise favors reaffirmance of the Restatement approach we endorsed in *Hodge*.

As we recently explained, an important determinant of whether a given common law rule

constitutes the soundest rule for the Virgin Islands is whether that rule "is inconsistent—or at least

in tension—with existing Virgin Islands common law and public policy." *Robertson*, 2023 VI at

¶ 37.  As noted earlier, this Court already adopted the Restatement approach in *Hodge*.  Although

we did so through application of former 1 V.I.C. § 4, *overruling a precedential decision of this*

*Court*—as opposed to simply declining to follow a decision of another Virgin Islands court—is

not something which should ever be undertaken lightly, particularly when there is no indication

that the rule adopted by our prior precedent is "unworkable" or was "badly reasoned." *Banks*, 55

V.I. at 985 n.10.  This is because the public interest very strongly favors "the evenhanded,

predictable, and consistent development of legal principles" and "foster[ing] reliance on judicial

---

*Salem Hunting Club*, No. 07 CO 16, 2008 Ohio App. LEXIS 5327, at *18-19 (unpublished);
*Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 636 (Pa. Super. Ct. 2015); *Zwart v. Penning*, 912
N.W.2d 833, 839-40 (S.D. 2018); *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah
1998); *Harris v. Carbonneau*, 685 A.2d 296, 437 (Vt. 1996); *Bellis v. Kersey*, 241 P.3d 818, 824-
25 (Wyo. 2010).

[11] *See, e.g., Ralphs Grocery Co. v. Victory Consultants, Inc.*, 225 Cal. Rptr. 3d 305, 317 (Cal. Ct.
App. 2017); *Uthus v. Valley Mill Camp, Inc.*, 246 A.3d 1225, 1239 (Md. 2021).

[12] See, e.g., *Gross v. Capital Elec. Line Builders, Inc.*, 861 P.2d 1326, 1329-30 (Kan. 1993).

decisions" so as to "contribute[] to the actual and perceived integrity of the judicial process." *Id.*

(quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). Having already adopted the Restatement

definition of trespass fifteen years ago and seeing no evidence whatsoever that this approach has

been unworkable or otherwise deficient—whether in the Virgin Islands or elsewhere—it would be

wholly arbitrary and unnecessarily disruptive to adopt a different common law rule merely for the

sake of adopting a different common law rule.[13] Accordingly, we reaffirm and adopt as the

soundest rule for the Virgin Islands, the rule first announced in *Hodge*, that

> a plaintiff claiming trespass has the burden of proving that the defendant
> intentionally (a) entered land in the possession of the other, or caused a thing or a
> third person to do so, or (b) remained on the land, or (c) failed to remove from the
> land a thing which he was under a duty to remove.

50 V.I. at 306 (internal quotation marks omitted) (quoting RESTATEMENT (SECOND) OF TORTS §

158 (1965)).

¶ 19     Applying these elements of trespass, we conclude that the Superior Court committed no

error when it determined that Bassil was likely to succeed on the merits of her claim. Bassil not

only introduced evidence demonstrating that she owned Parcel No. 2D-12 Remainder, but Klein

admitted to entering the property, creating and using trails on the parcel, and encouraging his

tenants to use those trails to access the beach. Moreover, both Bassil and Klein testified that Bassil

never gave Klein permission to enter the parcel or to create trails. In addition, the evidence

indicated that Klein offered to buy Bassil's parcel in 2014 and 2015, thus indicating that he knew

that Bassil owned the property – establishing not only that he intentionally entered Bassil's

---

[13] In fact, one of the recent Superior Court decisions to reject the Restatement approach did so for precisely that reason, determining that adopting a different broader definition of trespass "will allow Virgin Islands courts to develop their own body of law relating to trespass." *Bell*, 2015 WL 5773561, at *7.

property without authorization, but that he could not have acquired the parcel by adverse possession since Klein could not have exercised "[t]he uninterrupted, exclusive, actual, physical adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more" if he acknowledged Bassil as the owner of the property at any point during that fifteen year period. 28 V.I.C. § 11. Consequently, the Superior Court did not err when it found that Bassil's trespass claim had a reasonable likelihood of success on the merits over Klein's adverse possession claim.

## 2. Likelihood of irreparable harm to movant

¶ 20    Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Yusuf*, 59 V.I. at 854 (collecting cases). A moving party will satisfy the irreparable harm test if it can demonstrate that its monetary damages are either "difficult to ascertain or are inadequate." *Id.* When the record indicates that the plaintiff's loss is a matter of a "simple mathematic calculation," the plaintiff fails to establish irreparable injury for preliminary injunction purposes. *Id.*

¶ 21    The Superior Court determined that harm to Bassil was not only imminent, but currently and continually happening due to damage to her property and the loss of use and enjoyment of her property resulting from Klein's continuing trespass. The Superior Court found this harm to be irreparable based on the difficulty of calculating monetary damages due to the unknown number of guests who have used and would continue to use the paths on Bassil's parcel absent injunctive relief. Furthermore, the Superior Court highlighted the potential premises liability to which Bassil could be exposed, as well as the cloud that this dispute has placed on her title, in concluding that these issues may not be adequately redressed with monetary damages. Finally, the Superior Court emphasized the rights and intangible benefits that accompany property ownership.

¶ 22    While Klein contends that this jurisdiction does not recognize a presumption of irreparable harm when there is interference with a property right, Virgin Islands courts have in fact consistently recognized the value of property ownership and the "intangible benefits" associated with it.[14]  Virgin Islands courts have acknowledged that land in the Virgin Islands is a "particularly valuable and scarce resource."  *Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 593 (V.I. 2014); *see also Pavel v. Estates of Judith's Fancy Owners' Ass'n, Inc.*, 71 V.I. 691, 695 (V.I. 2019) (holding that "covenants attached to property in the Virgin Islands should be construed narrowly to promote the free use of land" because "[l]and in the Virgin Islands is a particularly valuable and scarce resource, and the Legislature has already established comprehensive zoning regulations governing its use") (internal quotation marks omitted); *In re Estate of Todman*, 48 V.I. 166, 178 (V.I. Super. Ct. 2006) ("When real property is the subject matter of an agreement, the legal remedy of damages is assumed to be inadequate, because each parcel of land is unique, and it is highly unlikely that an identical parcel of land could be purchased in substitution.").  Furthermore, courts have indicated that a preliminary injunction is appropriate where property is involved, since property is always unique under general principles of the law of equity, and its possible loss or destruction usually constitutes irreparable harm.  *Gladfelter v. Fairleigh Dickinson Univ.*, 25 V.I.

_____

[14] *Hansen v. Gov't of the V.I.*, 53 V.I. 58, 90-91 (V.I. Super. Ct. 1990) (recognizing benefits such as "the increased sense of pride, well-being and security attendant to the right to choose when and how to use, maintain and cherish one's property or to prohibit its unauthorized use"); *see also Great Bay Condo. Owners Ass'n v. Neighborhood Ass'n*, 2022 V.I. LEXIS 39, at *42 (V.I. Super. Ct. Apr. 11, 2022) (unpublished) (relying on *Hansen* to support its finding that even a timeshare plan is a form of property ownership that permits the purchaser to enjoy the intangible benefits associated with property ownership).  Furthermore, the Third Circuit has held that where "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011).

91, 99 (V.I. Super. Ct. 1990) (citing *Bennet v. Dunn*, 504 F. Supp. 981 (D. Nev. 1980); 42 AM. JUR. 2D *Injunctions* §§ 48-49 (1969)).[15] In cases of continuing trespass, it has been suggested that courts of equity should look to the nature of the injury inflicted, along with the fact of its continuation, rather than to the magnitude of the damage inflicted.[16] We therefore conclude as a matter of law that real property is unique in the Virgin Islands, creating a presumption of irreparable harm without a showing of money damages.

¶ 23    Bassil's parcel of land is particularly unique as one of the last undeveloped beachfront properties near Secret Harbor beach. Klein's interference with her property infringed on the intangible benefits of property ownership that belong to Bassil. The evidence supports the Superior Court's conclusion that the past deprivation of Bassil's rights to use and maintain her parcel as she sees fit constitutes irreparable harm.

¶ 24    In light of the strong presumption of irreparable harm in cases of interference with a property right as well as the evidence submitted by both parties showing ownership, we find no error that was committed by the Superior Court in finding that Bassil would suffer irreparable harm

---

[15] *See also First Am. Dev. Group/Carib, LLC v. WestLB AG*, Civil No. ST-09-CV-535, 2012 V.I. LEXIS 14, at *9-10 (V.I. Super. Ct. 2012) (unpublished) ("The Court agrees with First American that having its rights and interests foreclosed upon a unique asset such as real property could result in an injury that money damages may not compensate for.").

[16] *See Obermiller v. Baasch*, 823 N.W.2d 162 (Neb. 2012) (finding that an injunction was necessary because the fence constructed by the appellants constituted a continuous and repeated trespass); *John Larkin, Inc. v. Marceau*, 949 A.2d 551 (Vt. 2008) ("Plaintiffs showing a direct and tangible invasion of their property may obtain injunctive relief and at least nominal damages without proof of any other injury"); *Amaral v. Cuppels*, 831 N.E.2d 915 (Mass. App. Ct. 2005) (holding that the projection of golf balls from the defendants' property onto the plaintiffs' properties constitutes a continuing trespass).

absent injunctive relief.[17]  Therefore, because the Superior Court's conclusion that Bassil satisfied

this factor of the analysis bears a rational relationship to supportive evidentiary data, we affirm the

Superior Court's findings on this factor.

### 3.   Likelihood of irreparable harm to non-movant

¶ 25    The Superior Court must determine "whether, and to what extent, [a] nonmoving part[y]

will suffer irreparable harm" if injunctive relief is granted.  *Yusuf*, 59 V.I. at 856.  Additionally,

the Superior Court must consider whether a preliminary injunction would destroy the status quo,

as one of the main goals of a preliminary injunction is to maintain the status quo, which is defined

as "the last, peaceable, noncontested status of the parties."  *Id.* (quoting *Opticians Ass'n of Am. v.

Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

¶ 26    The trial court determined that the status quo for these purposes was in 2015 when Klein

made an offer to purchase the parcel.  However, Klein did not raise the issue of status quo in his

appellant's brief and we therefore consider argument as to this issue waived.  *See* V.I. R. APP. P.

22(m).  In balancing the harms between the parties, the Superior Court determined that Klein

would not suffer irreparable harm if an injunction were to be granted because he would merely

lose private beach access over Bassil's property to which he was not entitled.  In his brief, Klein

asserts that the Superior Court erred in not giving more weight to the harm that his business,

---

[17] The Superior Court also considered that monetary damages in this case would be difficult to
calculate and possibly inadequate, mentioning the combination of past, current, and continuing
trespass by an unknown number of individuals on Bassil's property; interference with her property
rights of using and maintaining her parcel as she sees fit; the potential premises liability that Bassil
may be exposed to; and the cloud placed on the title to her property.

reputation, and health interests would suffer in the face of a preliminary injunction.[18]

¶ 27    Specifically, Klein asserts that the Superior Court did not give enough weight to the evidence showing that Klein needs access to the beach for saltwater lung therapy; that he cannot access the beach like the rest of the public beachgoers because he is disabled; that the service road to the beach is dangerous; and that he relied on having beach access in choosing to purchase Parcel No. 2D-11.  The Superior Court reasoned that Klein had alternative means to obtain his saltwater lung therapy other than by accessing the beach over Bassil's parcel.  Similarly, in *Sam's Food Distribs., Inc. v. NNA&O, LLC*, this Court found that the nonmoving party had alternative means of providing storage for its food products other than by means of refrigerated trailers parked directly in front of the moving party's access to its parcel, and thus that the balance of harms weighed in favor of the moving party.  73 V.I. 453, 468-69 (V.I. 2020).  Due to being able to access the public beach like other beachgoers, Klein has failed to establish that issuance of the preliminary injunction would subject his health to irreparable harm, and therefore we conclude that the Superior Court did not err in its factual determination on this issue.

¶ 28    Because the Superior Court's finding is well supported by the evidence, we find no error in its determination that the likelihood of irreparable harm to Klein is low and that the balancing of harm to the parties favored issuance of the preliminary injunction restraining Klein from interfering with and entering Bassil's property.

---

[18] In its order, the Superior Court focused its analysis of irreparable harm to Klein on his health concerns and maintaining the status quo.  The Superior Court did not make factual findings on the harm to Klein's business or reputation.  Klein did not provide the Superior Court with any relevant evidence to show that his business or reputation interests would be harmed by granting the preliminary injunction.  In fact, Klein asserted harm to his reputation for the first time in his appellant's brief.  Thus, we consider the arguments regarding harm to his business and reputation interests waived for purposes of determining his alleged irreparable harm.  *See* V.I. R. APP. P. 22(m).

#### 4.   Public Interest

¶ 29    This Court has explained that "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Yusuf*, 59 V.I. at 857-58 (internal citations omitted).  In conducting its public interest analysis, the Superior Court should "seek to prevent the parties from halting 'specific acts presumptively benefiting the public . . . until the merits [can] be reached and a determination made as to what justice requires.'"  *Id.* at 858 (internal citations omitted).  The public interest factor will "typically favor the moving party 'if [it] demonstrates both a likelihood of success on the merits and irreparable injury."  *Id.* at 858 n.11 (internal citations omitted).

¶ 30    The Superior Court found that granting an injunction for Bassil would have little to no consequence on the public; no public activities would be halted by this injunction; and members of the public would not be impacted by an injunction "that prevents one resident from accessing the beach through his neighbor's private property."  Klein argues that an injunction prohibiting him and his renters from using the trails would "reduce tax revenue and the number of tourists patronizing his business," thereby causing the public interest to suffer.  Klein likens his situation to that in *Yusuf* where this Court found that "preventing the potential loss of business, jobs, and tax revenue in a community" is a matter of public interest.  59 V.I. at 858.  However, the dispute in *Yusuf* involved three large supermarkets and the employment of approximately 600 Virgin Islanders.  *Id.* at 844, 857.  Klein's rental business, which he began in January 2021, is distinguishable from the circumstances in *Yusuf*.  The preliminary injunction affects primarily Klein's private interests, rather than affecting the public interest at large.

¶ 31    Moreover, the Superior Court found that the public's interest is better served by discouraging trespass and disputes of this type between neighbors.  In his brief, Klein does not

address this finding, but rather emphasizes the fact that Bassil is a non-resident property owner. Although "[p]ublic interest can be defined a number of ways," the Superior Court appropriately identified being able to use and enjoy one's land as one sees fit, discouraging trespass, and promoting amicable relationships between neighbors as significant public interests. *Yusuf*, 59 V.I. at 858 (quoting *Opticians Ass'n of Am.*, 920 F.2d at 197). Because the Superior Court's factual determination bears a rational relationship to the supporting evidence, we find no error in its conclusion that the public interest factor weighs in favor of granting injunctive relief.

## III.    CONCLUSION

¶ 32    The Superior Court committed reversible error by failing to conduct its own *Banks* analysis, or adopt such an analysis as set out in one of the Superior Court's prior opinions on the subject, so as to permit it to satisfy its obligation to enunciate and apply the elements of a of a civil trespass cause of action in the Virgin Islands. Doing so was necessary in this case because injunctive relief was sought and a court cannot meaningfully assess a litigant's likelihood of success on the merits on the cause of action being asserted, as required to establish an entitlement to injunctive relief, without first determining what elements the litigant needs to satisfy in order to prevail on that cause of action. Nevertheless, this Court, exercising its discretion in the interest of judicial economy, has overlooked that error and, after conducting the required *Banks* analysis, reaffirms that the approach first announced in *Hodge v. McGowan*, 50 V.I. 296, 306 (V.I. 2008), adopting the factors identified in the Restatement (Second) of Torts § 158 (1965), is the soundest rule for the Virgin Islands. Applying those factors, the evidence clearly supports the Superior Court's finding that Bassil has a reasonable probability of success on the merits, that she would suffer irreparable harm absent an injunction, that Klein would not be irreparably harmed by the injunction, and that the injunction is in the public interest. We therefore conclude that the Superior

Court did not abuse its discretion in granting the preliminary injunction.  Accordingly, we affirm

the Superior Court's August 16, 2021 order granting the preliminary injunction in favor of Bassil.

**Dated this 18th day of December 2023.**

**BY THE COURT:**

/s/ Rhys S. Hodge___
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By: /s/** Jahkyda Coakley
    **Deputy Clerk II**

**Dated:** December 18, 2023